HUFFER, Appellant and Cross–Appellee,

v.

CICERO, Appellee and Cross–Appellant.

[Cite as *Huffer v. Cicero* (1995), 107 Ohio App.3d 65.]

Court of Appeals of Ohio,
Fourth District, Highland County.

No. 94CA852.

Decided Nov. 3, 1995.

66

*Ray, Todaro & Alton Co., L.P.A.,* and *Frank A. Ray,* for appellant.

*Plymale & Associates* and *Andrew W. Cecil,* for appellee.

HARSHA, Judge.

Appellant Scott Anthony Huffer appeals the trial court's decision to award him $16,000 in damages in his legal malpractice action against appellee Christopher T. Cicero, attorney at law. Cicero has also filed a cross-appeal challenging the trial court's decision.

The facts giving rise to this appeal began in August 1991, when appellant Huffer was indicted for one count of trafficking in drugs in Highland County Court of Common Pleas case No. 91–CR–97. In September 1991, appellant hired appellee Cicero to represent him on the criminal charges. On December 13, 1991, case No. 91–CR–97 was dismissed and appellant was subsequently indicted on six counts of trafficking in drugs in Highland County Court of Common Pleas

case No. 91–CR–155. The case proceeded to trial and a jury convicted appellant of all six counts. Appellant was then sentenced to one year on each count, to be served consecutively, and fined $2,500 on each count for a total of $15,000 in fines.

After appellant was sentenced, he hired different counsel to represent him on postconviction matters and incurred $26,500 in additional legal fees. Appellant was eventually granted shock probation after serving one hundred days in prison.

On January 28, 1993, appellant filed an action against Cicero for legal malpractice. The complaint alleged that appellee failed to disclose repeated plea negotiations made by the prosecution that would have allowed appellant to plead guilty to only two charges of trafficking in drugs. According to appellant, the terms of the plea bargain would have allowed Huffer to plead to the original one-count indictment in trafficking in drugs, plus one additional count in trafficking in drugs, pay $2,500 in mandatory fines on each count, and make $300 restitution. Additionally, the prosecution would recommend to the court that Huffer be put on probation after serving local jail time. The terms of the plea bargain demanded that Huffer cooperate with the prosecution in other drug cases. The complaint sought money damages for $10,000 in additional fines, $26,500 in additional legal fees, and damages for loss of employment, court costs, and bail.

Appellee initially failed to respond to the lawsuit. He refused service of process by certified mail and appellant was forced to make service by ordinary mail on February 18, 1993. Appellee also refused numerous attempts at service for purposes of discovery. Eventually, on June 15, 1993, appellee was personally served with an alias summons, a copy of the court order appointing a process server, a copy of the complaint, a set of interrogatories, a request for production of documents, and a notice and subpoena to appear at a deposition on July 8, 1993. Appellee, however, did not appear for the deposition. Appellee finally filed an answer on August 11, 1993, far beyond the time provided by Civ.R. 4.6 and Civ.R. 12(A)(1), without first having obtained leave of court.

In response to appellee's answer, appellant filed a motion to strike the answer and for a default judgment on the issue of liability. On November 3, 1993, the trial court granted default judgment in favor of appellant; the court took evidence on the issue of damages on April 8, 1994. At the April 8, 1994 hearing, appellee failed to appear in court, although he did have counsel present.

As several assignments of error challenge the trial court's legal conclusions based upon the evidence, we will briefly review some of the testimony offered at the hearing. The Highland County Prosecuting Attorney, Rocky A. Coss, stated that on October 28, 1991, while case No. 91–CR–97 was still pending, he offered a plea bargain to Cicero. He testified that he offered to allow Huffer to plead guilty to the one charge in the original indictment, and plead guilty to one additional drug trafficking count, if Huffer would agree to cooperate with the

prosecution in other drug cases. The terms of the agreement included that Huffer would have to pay $2,500 in mandatory fines on each count, pay an additional $300 in restitution, and that the prosecution would recommend thirty days of incarceration, then probation. According to Coss, a failure to accept the plea bargain would result in a new indictment charging appellant with six counts of drug trafficking. Coss further testified that, to his knowledge, appellee never presented the plea bargain offer to appellant. Instead, appellee responded that he did not represent "snitches" and that if appellant wanted to cooperate with the prosecution, he would have to "get himself another attorney."

Appellant also testified at the hearing. He stated that appellee never made known the possibility of any plea bargains to him and that he would have cooperated with the prosecution had the terms of the plea bargain been known. Appellant's mother also testified that she repeatedly asked Cicero about the possibility of obtaining a plea bargain, and that he continually told her that Coss would not offer any. She also testified that on December 21, 1991, Cicero came to her home and told her that Coss was threatening to bring a RICO action against her son, that "there was going to be blood spilled," and that he needed $15,000 more in attorney fees. She responded by writing a check to him on December 24, 1991 for $6,000.

Cicero testified at a later hearing that Coss never made any plea bargain offer on October 28, 1991. He also stated that money was never an issue in his representation of appellant, and that he never asked for any money. He further testified that the only offer Coss ever made occurred on February 18, 1992, two weeks before trial. He stated, however, that appellant refused to accept any plea bargain that demanded that he take a polygraph test to prove that he was telling the truth to law enforcement officials.

On June 21, 1994, appellant filed proposed findings of fact and conclusions of law with the trial court. On July 14, 1994, the court filed a decision and judgment entry finding in favor of appellant and awarding him $16,000, the amount of money paid to appellee in attorney fees. The court, however, did not award any other damages to appellant, and did not include findings of fact and conclusions of law in its judgment entry. The court stated in its judgment entry that it did not find that the appellant had proved, by a preponderance of the evidence, that the trial judge would have accepted appellant's plea of guilty to the two counts. Instead, the trial court held that the presiding judge might have rejected such a plea agreement and required appellant to plead to all six counts.

On July 28, 1994, appellant filed a Civ.R. 60(B) motion. The motion requested that the trial court increase its damage award based upon the fact that the trial court made a factual error in its July 14, 1994 judgment entry. Appellant argued that the initial plea bargain offered by Coss occurred before the six-count

indictment ever existed, and therefore, the trial court's reasoning with regard to damages was flawed. On August 12, 1994, appellant filed a notice of appeal of the trial court's July 14, 1994 judgment entry. On September 16, 1994, the trial court filed findings of fact and conclusions of law and also filed a separate judgment entry overruling appellant's Civ.R. 60(B) motion. Both parties have subsequently appealed.[1]

We will first consider the following cross-assignments of error raised by appellee:

I. "The trial court committed reversible error when it denied Christopher Cicero a jury trial and permitted plaintiff to withdraw his demand for a jury trial."

II. "The trial court erred in not directing a verdict in favor of Christopher Cicero on the issue of proximate cause."

III. "The trial court committed reversible error when it issued rulings and acted as if defendant's answer was stricken when in fact defendant's answer had not been properly stricken. If the answer of defendant was properly stricken, the trial court committed error in doing so."

IV. "The trial court committed reversible error when it commenced the hearing below without defendant in attendance."

■ Appellee first argues that the trial court erred by refusing to grant appellee a jury trial on the issue of damages. In the original complaint, appellant filed a demand for a jury trial. Appellee also filed a demand for a jury trial in his untimely answer of August 11, 1993. On November 30, 1993, appellant filed a motion to withdraw his jury demand and to proceed with a trial to the court on the issue of damages. Appellee resisted appellant's attempt to withdraw his jury demand, but on December 7, 1993, the trial court granted appellant's motion to withdraw his demand for a jury. Appellee now contends that the trial court's action constituted error because Civ.R. 38(D) provides that a demand for a trial by jury may not be withdrawn without the consent of both parties. See Civ.R. 38(D).

---

1. We note that appellant states in his brief that he is appealing the court's decision and subsequent ruling on his Civ.R. 60(B) motion. However, the appeal filed on August 12, 1994, expressly states that the appeal is from the July 14, 1994 judgment entry recorded by the trial court. We further note that because appellant made a timely request for findings of fact and conclusions of law, no final appealable order in this case existed until September 16, 1994, when the trial court filed the findings of fact and conclusions of law requested by appellant. See App.R. 4(B)(2). However, we will consider appellant's premature notice of appeal to be timely filed under App.R. 4(C).

We agree that generally when one party has requested a trial by jury, a trial by jury must be granted unless both parties consent to try the action before the court. See Civ.R. 38(D); Civ.R. 39(A) and Commentary. However, Civ.R. 39(A) also states in part that:

"The failure of a party or his attorney of record either to answer or appear for trial constitutes a waiver of trial by jury by such party and authorizes submission of all issues to the court."

In this case, appellee failed to file a timely answer to the complaint. Further, when appellee finally did submit an answer over six months later, appellee failed to first obtain leave of court and make a showing of "excusable neglect" as mandated by Civ.R. 6(B). See Civ.R. 6(B)(2); *Miller v. Lint* (1980), 62 Ohio St.2d 209, 16 O.O.3d 244, 404 N.E.2d 752; *McDonald v. Berry* (1992), 84 Ohio App.3d 6, 616 N.E.2d 248. Because appellee never filed a valid answer in this case, the trial court correctly found that appellee waived his right to a jury trial under Civ.R. 39(A). As a result, we overrule appellee's first cross-assignment of error.

■ Appellee's second assignment of error contends that the trial court should have granted appellee a directed verdict on the issue of proximate cause. In essence, appellee argues that all of appellant's damages were a direct and proximate result of his own illegal conduct, and therefore appellee cannot be liable for any damages sustained by appellant as a matter of law. We disagree.

We first note that Civ.R. 8(D) provides in part:

"Averments in a pleading to which a responsive pleading is required, other than those to the amount of damage, are admitted when not denied in the responsive pleading."

As stated earlier, appellee never filed a proper answer to appellant's initial complaint; therefore, issues regarding negligence and proximate cause were essentially admitted by appellee.

■ However, even if we were to find that appellee did not waive the issue of proximate cause, we would still reject his argument. A directed verdict is proper when, after construing the evidence most strongly in favor of the nonmoving party, the court determines that the trier of fact could reach only one result under the theories of law presented in the complaint. See Civ.R. 50(A)(4); *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 90, 31 OBR 250, 256, 509 N.E.2d 399, 404–405.

■ The Ohio Supreme Court has expressly held that an attorney may be liable for legal malpractice for damages proximately resulting from a failure to inform a criminal defendant of a possible plea bargain. See *Krahn v. Kinney*

(1989), 43 Ohio St.3d 103, 538 N.E.2d 1058. In *Krahn,* the Supreme Court of Ohio stated that:

"Krahn's claim is based in part on Kinney's alleged failure to communicate the prosecutor's offer. Consequently, Krahn was forced into the situation of having to plead to a more serious charge or risk a still greater conviction and sentence. Krahn may have made a valid plea on the day of trial, but she would have been better served had she accepted the earlier bargain. As aptly stated by the court of appeals, the injury in such a situation 'is not a bungled opportunity for vindication, but a lost opportunity to minimize her criminal record.'" (Footnote omitted.) *Id.* at 105–106, 538 N.E.2d at 1061.

At the hearings, appellant presented the testimony of Coss, who stated that he offered a plea bargain to appellee in which his client would be able to plead to two counts of trafficking in drugs, instead of facing trial on six counts. Both appellant and appellant's mother testified that they were hoping to obtain a plea bargain from the prosecution. Thus, reasonable minds could find that appellant sustained damages as a result of appellee's failure to communicate the plea offers. We thus overrule appellee's second cross-assignment of error.

Appellee next argues that the trial court erred by issuing rulings in such a manner as if his answer was properly stricken from the record when, in fact, the court never journalized an entry striking his answer. Appellee also argues that if his answer was stricken, the trial court erred in doing so.

Appellant filed a motion on September 24, 1993 to strike the appellee's answer, obtain a default judgment on the issue of liability, and set a hearing date for damages. On October 22, 1993, the trial court held a hearing on the default motion in which the appellee offered *no evidence* to show that his repeated failure to comply with the Civil Rules was due to "excusable neglect." As a result, on November 3, 1993, the trial court entered a decision and judgment entry granting appellant a default judgment on the question of liability.

We believe that the November 3, 1993 judgment entry had the practical effect of striking appellee's answer. Appellant's motion for default judgment and to strike the appellee's untimely answer were one and the same. The trial court's grant of default judgment in favor of appellant struck appellee's answer, notwithstanding the lack of specific language to that effect.

Further, we do not believe the trial court committed reversible error by granting a default judgment in favor of appellant. Civ.R. 55(A) states, in pertinent part:

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled

to a judgment by default shall apply in writing or orally to the court therefor; * * * If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least seven days prior to the hearing on such application."

Civ.R. 55 allows a trial court to enter a default judgment against a party who has failed to defend an action in compliance with the Ohio Rules of Civil Procedure. A trial court's decision to either grant a default judgment in favor of the moving party, or allow the defending party to file a late answer pursuant to Civ.R. 6(B)(2) upon a finding of excusable neglect, will not be reversed absent an abuse of discretion. See *Miller v. Lint, supra; McDonald, supra.* An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. See *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24, 30–31.

We cannot find an abuse of discretion of the trial court for entering a default judgment in favor of appellant. Appellee in this case repeatedly refused service of process and ignored the mandates of the Ohio Rules of Civil Procedure. The trial court found that appellee offered no grounds for excusable neglect at the hearing on the default judgment. As a result, we cannot find an abuse of discretion on the part of the trial court, and therefore overrule appellee's third cross-assignment of error.

Appellee's fourth cross-assignment of error contends that the trial court's decision should be reversed because the trial court commenced the damages hearing without appellee in attendance. At the April 8, 1994 hearing, appellee was not personally present, although he was represented by counsel. Counsel for appellee moved for a continuance because appellee was engaged in a trial in Cuyahoga County at the time of the hearing. The trial court overruled the motion to postpone the April 8, 1994 hearing. However, the court scheduled a separate hearing on May 25, 1994, in order to give appellee an opportunity to testify and present evidence.

It is within the trial court's discretion whether to grant a motion for a continuance. See *Niam Investigations, Inc. v. Gilbert* (1989), 64 Ohio App.3d 125, 580 N.E.2d 840. We cannot find any abuse of discretion on the part of the trial court. As a licensed attorney, appellee should have made arrangements to appear on April 8, 1994, notwithstanding a potential scheduling conflict. The implications of a failure to appear were obvious. Furthermore, appellee had the opportunity to present any evidence which he deemed appropriate at the May 25, 1994 hearing. Appellee was also given the opportunity to cross-examine all the

witnesses who testified at the April 8, 1994 hearing. We therefore cannot find that the trial court abused its discretion and overrule appellee's fourth cross-assignment of error.

We will next address the following assignments of error alleged by appellant:

I. "The trial court erred when, as trier of the fact, a mistake of fact prevented the court from awarding damages to which plaintiff was entitled."

II. "The trial court erred in its award of damages to plaintiff, as they were grossly inadequate and against the manifest weight of the evidence."

III. "The court erred as a matter of law where it made an erroneous conclusion of law based on a mistake of fact."

As all three of the above assignments of error challenge the court's award of damages, we will consider them together.

In a legal malpractice action, a client is entitled to be compensated for any damages proximately caused by the attorney's malpractice. See *Krahn, supra.* Proximate cause generally requires evidence that a result was more likely than not to have been caused by a defendant's negligence. See *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 28 OBR 429, 504 N.E.2d 44; *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97. Whether a defendant's negligence proximately caused an injury is usually an issue to be determined by the trier of fact. See *Cascone v. Herb Kay Co.* (1983), 6 Ohio St.3d 155, 6 OBR 209, 451 N.E.2d 815; *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 288, 21 O.O.3d 177, 181, 423 N.E.2d 467, 471–472. We will therefore not reverse the trial court's determination of damages as long as it uses the correct legal measure of damages and is supported by competent, credible evidence. See *State ex rel. Pizza v. Strope* (1990), 54 Ohio St.3d 41, 560 N.E.2d 765.

Appellant contends that the trial court erred by awarding the plaintiff only $16,000 in damages, the amount of legal fees he paid to appellee.[2] Appellant first contends that the trial court erred by not awarding him $10,000 in damages in additional fines as a result of the appellee's failure to disclose the prosecution's offer of a plea bargain. We agree.

In its findings of fact and conclusions of law, the trial court states in part:

"1. Huffer was indicted in this court on one count of trafficking in drugs in case number 91–CR–97.

---

2. Neither side has appealed the award of $16,000 of attorney fees to appellant. Therefore, we will not address this portion of the trial court's award of damages.

"2. Case number 91–CR–97 was later dismissed and the defendant was indicted on six counts of trafficking in drugs in case number 91–CR–155.

" * * *

"4. *While case number 91–CR–97 was pending, the prosecutor proposed to defendant a plea bargain,* the terms of which were that the plaintiff (1) would plead guilty to two of six charges of trafficking in drugs; (2) cooperate with the prosecutor in other drug cases; and (3) pay $2,500 on each of the charges and make $300 restitution; and the prosecutor would not pursue the remaining four counts and would recommend that the court place the plaintiff on probation after serving local jail time.

"5. Defendant did not relay the plea negotiation terms to the plaintiff *prior to the dismissal of the case* number 91–CR–97 or at any time prior to the trial." (Emphasis added.)

In its findings of fact, the trial court found that the plea offer by Coss occurred, as Coss testified, prior to the time that appellant was indicted on six counts of drug trafficking. Thus, although the court found that it was not established by a preponderance of the evidence that the presiding judge would have accepted the plea negotiation, such a finding is inherently inconsistent with the court's determination that the plea bargain was made prior to the time appellant had been indicted on all six counts. Even appellee, although he disagrees when specifically the plea bargain was offered, testified that the six-count indictment had not been returned when the plea bargain was originally offered.

Further, Prosecutor Coss testified as follows at the April 8, 1994 hearing on damages:

"Q. And with respect to all of the other defendants who pleaded guilty, those having similar offers who fit in the category or having similar offers under similar circumstances, were those pleas accepted by the court and imposed consistent with your recommendation?

"MR. CECIL: Objection.

"THE COURT: Overruled. You may answer that.

"A. Yes, they were."

Thus, Coss's uncontroverted testimony established that the presiding judge in the case accepted all the other pleas that were similar to the plea offered to appellant. As a result, there was simply no competent, credible evidence from which the court could find that appellant would have been singled out by the court and given different treatment. Furthermore, had the appellant pleaded guilty to the offer, the maximum mandatory fine which the trial court could have imposed was $5,000 ($2,500 on each count), rather than the $15,000 under the

subsequent six-count indictment. Had the trial court rejected the plea bargain, appellant faced a maximum mandatory fine of $2,500 on the single-count indictment in the initial criminal case. Consequently, we sustain appellant's assignment of error regarding the $10,000 in additional fines imposed as part of his sentence.

■ Appellant next contends that the trial court erred by not granting appellant court costs for the trial in the amount of $1,217.26 and a $1,000 bond incurred on December 18, 1991. We again agree with appellant that the trial court's ruling was not supported by competent, credible evidence. It is undisputed that appellant incurred court costs and a $1,000 bond as a result of going to trial. It is clear that these costs would have been avoided had appellee informed appellant of the initial plea bargain offered by the prosecution.[3] We therefore sustain appellant's assignment of error with regard to court costs and bond.

■ Likewise, we must sustain appellant's assignment of error regarding the trial court's refusal to award the $26,500 in attorney fees sustained by appellant after his conviction. If appellant would have been informed of the plea bargain offered by the prosecution, appellant's trial would have never occurred, and it would have never been necessary for appellant to procure counsel to represent him in postconviction proceedings. Thus, we again find that the trial court's denial of the $26,500 in damages was not sustained by competent, credible evidence.

■ However, we sustain the trial court's finding that appellant's loss of employment was not proximately caused by appellee's failure to disclose the plea bargain offered by the prosecution. Appellant offered no evidence at trial that, but for his subsequent conviction on six counts rather than two, he still would have been employed at his previous job. Such an assertion is pure speculation. Thus, we agree that appellant did not prove by a preponderance of the evidence that his loss of employment was proximately caused by appellee's malpractice.

---

3. The trial court never made an explicit finding of fact as to whether appellant would have accepted the plea bargain offered by the prosecution. However, implicit in the court's initial judgment entry and later findings of fact and conclusions of law is the assumption that appellant would have accepted the prosecution's plea bargain. For example, in its July 14, 1994 judgment entry, the court notes that:
   "In this case, the offer by the prosecutor was made to Huffer's attorney who did not communicate the offer to Huffer. In fact, he told Huffer that the prosecutor made no offer."
   Further, although appellee testified that he communicated the plea bargain to appellant and appellant refused because he did not wish to take a lie detector test, the trial court obviously did not find appellee's testimony credible because the court later found that appellee never informed appellant of any plea offers. Thus, there again was no evidence from which the trial court could find that appellant would not have accepted the prosecution's plea bargain.

Accordingly, the judgment of the trial court is affirmed in part and reversed in part. This matter is remanded to the trial court with instructions to enter judgment accordingly.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

STEPHENSON and KLINE, JJ., concur.