{¶ 1} Appellant Eleanor Evans, et al., appeals the trial court's decision granting summary judgment in favor of Leonard F. Carr Co., L.P.A., et al. Evans assigns the following error for our review:
 "The trial court committed prejudicial error in granting summary judgment — journal entry dated March 29, 2006."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} In September 1983, Evans and her now deceased husband, William, began operating William Evans Jewelers in Mayfield Heights, Ohio. In 2000, due to William's failing health, they agreed to sell their jewelry store to M.D. Jackson, Inc. ("Jackson") for the sum of $400,000.
 {¶ 4} Pursuant to the sale agreement, the purchase would be financed with a cash payment of $248,000, which consisted of $18,000 from Jackson's personal assets and $230,000 from a Small Business Association ("SBA") guaranteed loan. In addition, Evans and her husband agreed to finance the remaining $152,000 of the sale price.
 {¶ 5} In exchange, Jackson would execute a cognovit promissory note in the amount of $152,000, bearing interest at five percent (5%) per year, with interest starting to accrue as of July 1, 2001. The note would be personally guaranteed by Richard E. Jackson and Martha H. Jackson in their individual capacity. Payments would be required in the amount of $1,500 per month commencing July 31, 2001, increasing monthly throughout the year and rising to $9,000 per month in December *Page 4 
2001. The note would be secured by a mortgage on the personal residence of Richard and Martha Jackson located in Bay Village, Ohio. The loan would be secured by a Security Agreement and Uniform Commercial Code-1 ("UCC-1").
 {¶ 6} After settling on the terms of the agreement, Evans retained the law firm of Leonard F. Carr Co., L.P.A. ("Carr") to prepare the Bill of Sale, Security Agreement, and Promissory Note. In addition, Carr reviewed and modified the Asset Purchase Agreement prepared by Jackson's attorney.
 {¶ 7} In the meantime, Jackson applied to CIT Business Lending Corporation ("CIT") for a SBA guaranteed loan and disclosed that he would be executing a promissary note to Evans in the amount of $152,000. As a result of the disclosure, CIT indicated that as a condition of the loan, the SBA would require Evans to sign a Standby Creditor's Agreement.
 {¶ 8} Pursuant to the Standby Creditor's Agreement, Evans would accept payment on the promissary note beginning no earlier than January 1, 2006, Evans would turn over to CIT any payments received from Jackson in violation of the agreement, Evans would take no action to enforce claims against Jackson on the promissary note until Jackson had fully repaid the loan from CIT, Evans would take no action against Jackson's collateral without consent from CIT, until Jackson had repaid CIT's loan, and Evans would sign documentation required by CIT to subordinate to CIT's security interests in collateral that secured both the loan and the promissary note. *Page 5 
 {¶ 9} On December 12, 2000, William Evans signed the Standby Creditor's Agreement. The SBA approved Jackson's loan, and on January 9, 2001, issued payment to Evans in the amount of $230,000.
 {¶ 10} On December 31, 2001, Jackson tendered a partial payment of $3,000 on the promissary note. Jackson indicated that he was unable to remit the required payment of $9,000 because of a sharp decline in the normally strong December retail sales. Jackson further indicated that he would pay the $6,000 shortfall in the following six months, along with the regular monthly payments.
 {¶ 11} On July 2002, after Jackson had paid approximately $20,000 to Evans on the promissary note, he stopped paying completely. Evans filed suit on the promissary note, obtained judgment in the amount of $130,968, and placed a lien on Jackson's Bay Village home. However, on September 2002, Evans agreed to settle the judgment with Jackson for monthly payments of $2,000 and to refrain from any further legal effort at collecting on the judgment.
 {¶ 12} On April 2003, Jackson filed for bankruptcy relief. During Jackson's bankruptcy proceedings, Evans learned that Carr had failed to properly file the financing statement to perfect Evans' security interest in Jackson's assets. Evans learned that Carr had filed the UCC-1 with the Cuyahoga County Recorder, but had failed to file the UCC-1 with the Ohio Secretary of State pursuant to Ohio Revised Code § 1309.38, which required dual filings of the UCC-1.
 {¶ 13} Consequently, CIT disputed Evans' position as a secured creditor inasmuch as CIT had performed its dual filing of its UCC-1 and Evans' UCC-1 was *Page 6 
never filed with the Ohio Secretary of State. However, Evans and CIT achieved a settlement after the bankruptcy court abandoned its interest in the assets in dispute. The assets of the jewelry store were sold at auction and the proceeds were split equally between Evans and CIT, with each receiving the sum of $16,921.24.
 {¶ 14} On May 6, 2004, Evans filed a legal malpractice action against Carr for failing to correctly perfect a security interest in the assets of William Evans Jewelers, which had been purchased by Jackson. Evans specifically alleged that Carr's failure caused her to lose her first position in interest to the assets of Jackson. Evans further alleged that Carr's failure resulted in her losing half of the proceeds from the sale of the assets after Jackson filed for bankruptcy.
 {¶ 15} On February 23, 2006, Carr filed a motion for summary judgment, and on March 20, 2006, Evans filed her motion in opposition. On March 30, 2006, the trial court granted Carr's motion for summary judgment. It is from this order that Evans now appeals.
 Summary Judgment {¶ 16} In her sole assigned error, Evans argues the trial court erred in granting summary judgment in Carr's favor. We disagree.
 {¶ 17} We review an appeal from summary judgment under a de novo standard of review.[1] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is *Page 7 
appropriate.[2] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion, which is adverse to the non-moving party.[3]
 {¶ 18} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[4] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[5]
 {¶ 19} To establish a cause of action for legal malpractice in a civil matter, plaintiff must demonstrate (1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach.[6]
 {¶ 20} In the instant case, it is undisputed that Carr failed to file the UCC-1 with the Ohio Secretary of State, which would have perfected Evans' security interest in Jackson's assets. Carr's failure to file the UCC-1 with the Ohio Secretary of State *Page 8 
did not meet the standard of care expected of a reasonable prudent attorney. However, the record before us indicates that there is no causal connection between Carr's failure to file the UCC-1 with the Ohio Secretary of State and the losses Evans alleges. In an action for legal malpractice, a client is only entitled to compensation for damages proximately caused by his attorney's malpractice.[7]
 {¶ 21} The trial court's journal entry states in pertinent part as follows:
 "* * * Plaintiff's husband agreed to subordinate their interest in payments and collateral to CIT in order to allow Jackson to secure theSBA loan for purchase of William Evans Jewelers. No damages proximately resulted from defendant failing to file the security interest with the Ohio Secretary of State."[8]
 {¶ 22} The record indicates that Evans' husband signed a Standby Creditor's Agreement wherein he specifically agreed to subordinate their interest to that of CIT's until the SBA loan was fully repaid. Evans also agreed not to accept any payments from Jackson on the promissary note until January 1, 2006. Evans also agreed not to file a claim or execute on collateral until the SBA loan was fully repaid. Consequently, had Carr filed the UCC-1 with the Ohio Secretary of State, Evans' security interest would still have been secondary to CIT's interest.
 {¶ 23} Nonetheless, Evans argues that she should not be bound by the Standby Creditor's Agreement because her deceased husband signed the document in his individual capacity and not as a corporate officer. We are not persuaded. *Page 9 
 {¶ 24} Although the record before us reflects that the Standby Creditor's Agreement lists William Evans as the standby creditor and his signature did not indicate a position as a corporate officer, the Standby Creditor's Agreement listed the SBA loan name as William Evans Jewelers. Further, all the attached documents, including copies of the promissary note and security agreement, along with the schedule of items subject to the security agreement, all referenced William Evans Jewelers as the party to the agreement.
 {¶ 25} Moreover, Evans' motivation to sign the Standby Creditor's Agreement cannot be overlooked. The record indicates that the Evanses agreed to finance $152,000 of the $400,000 sale price. This figure represented more than a third of the sale price. The Evanses' willingness to finance a third of the sale price evinces strong motivation to sell their jewelry store.
 {¶ 26} Most importantly, the record indicates that Jackson had only $18,000 of his own money to put towards the purchase of the store and the remaining $230,000 would be financed through CIT and guaranteed by the SBA. However, the SBA would not approve the loan without the Evanses signing the Standby Creditor's Agreement to subordinate their priority interest to that of CIT's. If William Evans had not signed the Standby Creditor's Agreement, Jackson would not have received the loan, and the sale would not have been consummated. William Evans signed *Page 10 
the Standby Creditor's Agreement to effect the sale of the store. In so doing, William Evans was acting in the interest of the corporation.
 {¶ 27} We conclude, despite Carr's failure to file the UCC-1 with the Ohio Secretary of State, there are no questions of material fact. Carr's failure was not the proximate cause of the losses that Evans alleges. Evans' security interest was inferior to CIT's by virtue of Evans signing the Standby Creditor's Agreement. Under the circumstances, had Carr filed the UCC-1 with the Ohio Secretary of State, CIT's priority interest would have been superior to that of the Evanses. Thus, the trial court properly granted summary judgment in favor of Carr. Accordingly, we overrule Evans' sole assigned error.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, JUDGE
JAMES J. SWEENEY, P.J. and SEAN C. GALLAGHER, J., CONCUR
[1] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[2] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[3] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
[4] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[5] Id. at 293.
[6] Krahn v. Kinney (1989), 43 Ohio St.3d 103, 105. See alsoMcInnis v. Hyatt Legal Clinics (1984), 10 Ohio St.3d 112; Loveman v.Hamilton (1981), 66 Ohio St.2d 183; Harter v. Morris (1869),18 Ohio St. 493.
[7] Huffer v. Cicero (1995), 107 Ohio App.3d 65, 75.
[8] Journal Entry, March 30, 2006. *Page 1