[Cite as *Walker v. Insane Clown Posse, L.L.C.*, 2019-Ohio-5150.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Andrea Walker | Court of Appeals No. L-18-1198 |
| Appellant | Trial Court No. CI0201604416 |
| v. | |
| Insane Clown Posse, LLC, et al. | **DECISION AND JUDGMENT** |
| Appellees | Decided: December 13, 2019 |

* * * * *

Zachary J. Murry, for appellant.

Mark I. Jacobs, for appellees.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Andrea Walker, appeals the judgment of the Lucas County Court of Common Pleas, awarding her $2,000 in damages against appellees, Insane Clown Posse, LLC, Psychopathic Records, Inc., and Psychopathic Records The Label That Runs Beneath The Streets, LLC.  For the reasons that follow, we reverse.

## I. Facts and Procedural Background

{¶ 2} On September 29, 2014, appellant was injured while attending an Insane Clown Posse ("ICP") concert. Appellant suffered a distal radius fracture of her right wrist, and a facial laceration that required stiches. The injury to her wrist caused appellant to miss approximately 12 weeks of work in her job as a cardiac nurse.

{¶ 3} On September 27, 2016, appellant initiated the present action by filing a complaint in negligence against appellees, as well as Headliners Promotions, LLC, Innovation Concepts, LLC, and 4500 N. Detroit Ave., LLC. In addition to compensatory damages, the complaint also sought punitive damages. The complaint alleged that during the concert, ICP regularly sprayed the members of the audience with Faygo soda pop. Near the end of the concert, ICP began playing the song "Bang! Pow! Boom!" As they played, members of the audience rushed the stage area and joined ICP on the stage. Once on stage, rather than spraying the audience with Faygo, the audience members proceeded to throw full, unopened two-liter bottles of Faygo into the crowd below. The complaint alleged that the actions and behavior of the audience members, including throwing the full two-liter bottles, was done with the knowledge and consent of appellees, and that at no time did appellees attempt to stop, limit, or otherwise abate the throwing of the two-liter bottles.

{¶ 4} As appellant was watching the concert, one of the full two-liter bottles struck her in the chest. The complaint alleged that appellant immediately felt dizzy and short of breath, and that she then lost consciousness and fell face-first onto the hard concrete floor

2.

of the venue. Appellant was treated on scene by emergency medical services, and then transported to Mercy St. Vincent Medical Center, where she also worked. At the hospital, appellant was diagnosed with syncope (a loss of consciousness), a facial laceration that required stiches, and a distal radius fracture of her right wrist.

{¶ 5} The complaint concluded that "[a]s a direct and proximate result of September 29, 2014, actions and inactions of the Defendants as described herein, [appellant] sustained serious personal injuries including but not limited to a fracture of her wrist, scarring of her face, and the incursion of substantial medical bills, and lost wages."

{¶ 6} Appellees were served with a copy of the complaint on October 3, 2016. On December 5, 2016, appellant moved for a default judgment in light of appellees' failure to plead or otherwise defend against the complaint. The trial court granted appellant's motion, and entered default judgment against appellees on December 30, 2016. Thereafter, appellant voluntarily dismissed Headliners Promotions, LLC, Innovation Concepts, LLC, and 4500 N. Detroit Ave., LLC.

{¶ 7} On January 25, 2017, appellees moved to vacate the default judgment against them, citing mistake, inadvertence, or excusable neglect. A second motion to vacate was filed on February 21, 2017. The trial court denied the motions to vacate on April 19, 2017.

{¶ 8} Thereafter, the matter proceeded to an assessment of damages hearing on April 20, 2018. At the hearing, appellant's friend, Andrew Sutter, testified first. Sutter

3.

stated that he invited appellant to attend the ICP concert on September 29, 2014. Near the end of the concert, ICP began playing the song "Bang! Pow! Boom!," during which fans rushed onto the stage. Sutter observed some fans grabbing full two-liter bottles from buckets on the stage, and throwing them as hard as they could into the crowd. One of those two-liter bottles flew towards Sutter and appellant. Sutter testified that he felt the bottle impact appellant because she was standing directly in front of him, and when the bottle struck her it pushed her back into him.

{¶ 9} After the impact, appellant turned to Sutter and said "ow, that hurt." Sutter testified that appellant then began to walk away. Sutter saw that after appellant had walked about 15 steps, or 15 feet, she became unsteady and collapsed forward. Sutter explained that appellant's fall appeared to be uncontrolled; she fell forward, did not make any attempt to brace herself, and did not seem like she was aware that she was falling. Sutter testified that approximately ten seconds elapsed from when appellant was struck with the two-liter bottle to when she collapsed.

{¶ 10} Sutter then went to appellant. Someone who identified herself as a nurse was closer to appellant when she fell, and had immediately rolled appellant over and was tending to her. Appellant did not appear to be conscious. Seeing that appellant was being tended to, Sutter went to seek medical help.

{¶ 11} Appellant next testified on her own behalf. Appellant testified that towards the end of the performance, a number of audience members climbed on stage and began throwing full two-liter bottles into the crowd. Appellant was struck in the chest by one of

4.

those bottles, and she said that it took her breath away.  Appellant turned to Sutter and said, "ouch, that hurts, gotta go."  Appellant testified that she then began walking to the restroom, and the next thing she remembers is waking up to people hovering over her.

{¶ 12} At the hospital, appellant was diagnosed with a right wrist fracture.  She also received eight stiches to close a laceration on her forehead.  Appellant testified that the resulting scar from the laceration has caused her to become self-conscious to the point that she does not take as many pictures as she did before the injury.  Appellant stated that she "feel[s] like a freak."  Regarding the wrist injury, appellant testified that the injury caused her to miss work for 11 and one-half weeks.  Upon returning to work, appellant has experienced some difficulty with using her wrist, whether as an anchor during chest compressions, or in the general lifting and pulling that she has to do throughout the day.  Appellant also testified that she has developed arthritis in her wrist, and that her range of motion in the wrist has decreased.

{¶ 13} Following her own testimony, appellant called as on cross-examination, the managing member of Insane Clown Posse, LLC, William Dail.  Dail testified that ICP performs around 30 to 35 shows per year.  For each of these shows, ICP generally sells between one and 40 VIP passes, and they have been doing so for the past five years.  The price for a VIP ticket is $100, and the price for a regular ticket is $25 to $35.  As part of the VIP package, fans get a meet and greet with the members of ICP, and are permitted onto the stage during the band's final song for what is dubbed the "Faygo Armageddon."

5.

{¶ 14} For the September 29, 2014 show, in particular, Dail testified that ICP sold between three and five VIP passes. However, approximately 20 fans were on the stage. Dail nonetheless admitted that ICP bears responsibility for the people on the stage regardless of whether or not they paid to be VIPs.

{¶ 15} Dail additionally testified to two other instances where an audience member was injured at a show. The first was in 2010, in southern Illinois, where a fan was injured when he jumped the fence and climbed onto the stage and was injured by one of the stage props. The second instance occurred after the September 29, 2014 show, where a fan in Texas was injured during the "Faygo Armageddon" when she was allegedly hit in the eye with a bottle.

{¶ 16} As her final witness, appellant submitted the video deposition of Dr. Donato Borrillo. Dr. Borrillo opined to a reasonable degree of medical certainty that when appellant was struck in the chest with the two-liter bottle, she experienced a syncopal episode, dropped to the ground, hit her head, and broke her wrist. Dr. Borrillo testified that the injury to appellant's wrist resulted in permanent impairment to her range of motion. Dr. Borrillo further estimated that the reasonable present and future value of appellant's medical costs in this case was $31,000.

{¶ 17} Following the hearing, the trial court entered its judgment on August 29, 2018. In the judgment entry, the trial court examined whether the event of appellant being struck by the bottle was the proximate cause of her fall. The court found that the facts established "two separate events producing divisible injuries: [Appellant] was

6.

struck by a two liter bottle of soda, directly resulting in pain and a bruise that lasted 'a couple of days,' and she subsequently fell or collapsed on the floor, sustaining a broken wrist and a laceration to her forehead." Further, the court found that appellant's theory that being struck by the bottle led to the cardiac/syncopal episode that caused her to fall must be established by expert medical testimony.

{¶ 18} The trial court then turned to examine Dr. Borrillo's testimony. The court found that Borrillo's medical opinion lacked probative value and credibility because it was not supported by the medical records. In particular, the trial court cited Borrillo's reliance, in part, on one set of blood pressure and pulse readings, but noted that Borrillo did not address several other readings that were taken during the course of appellant's treatment, and which purportedly contradicted Borrillo's conclusion that appellant suffered an arrhythmia that led to the syncopal episode. In addition, the trial court found that Borrillo's opinion that his testimony regarding causation would not change if appellant had collapsed within moments after being struck by the bottle lacked probative value because it was based solely on temporal causation.

{¶ 19} Thus, the trial court found that appellees were not liable to appellant for "her damages resulting from the unexplained fall or collapse, including her broken wrist, forehead laceration, medical bills and lost wages stemming from those injuries, none of which were otherwise attributed to [appellant's] merely being struck by the bottle." Instead, the court found that appellees were liable to appellant for her pain and suffering

7.

in the amount of $2,000, which was proximately caused by being struck with the two-liter bottle of soda.

{¶ 20} Finally, the trial court found that appellant had not demonstrated that appellees acted with hatred, ill will, or a spirit of revenge, or that they acted with a conscious disregard for appellant's safety as required to support an award of punitive damages. Specifically, the trial court noted that Dail testified regarding the precautions that ICP takes in providing security and instructing the VIPs on what may or may not be done while on stage. Thus, the court found that punitive damages were not supported by clear and convincing evidence, and denied the same.

## II. Assignments of Error

{¶ 21} Appellant has timely appealed the trial court's August 29, 2018 judgment, and now asserts three assignments of error for our review:

1. The trial court's damage award to the Plaintiff was plain error and against the weight of the evidence.

2. The trial court erred by arbitrarily disregarding competent and unrebutted expert testimony of Plaintiff's expert.

3. The trial court erred by failing to assess punitive and/or exemplary damages against the ICP Defendants.

## III. Analysis

{¶ 22} In support of her first and second assignments of error, appellant argues that the trial court erred when it considered and found that appellant failed to demonstrate

8.

that appellees proximately caused her injuries. Appellees, on the other hand, argue that the trial court's examination of proximate cause was proper, and that appellant failed to establish that her fall and appellees' conduct were proximately related. Thus, the threshold issue before us is whether a trial court may consider the issue of proximate cause in a damages hearing following a default judgment.

{¶ 23} Generally, "[t]he determination of the damage award is a factual determination that must be supported by the evidence and, therefore, will not be overturned on appeal unless it is contrary to the manifest weight of the evidence." *Reinbolt v. Kern*, 183 Ohio App.3d 287, 2009-Ohio-3492, 916 N.E.2d 1100, ¶ 28 (6th Dist.). However, because the issue of whether the trial court can examine proximate cause following a default judgment involves the application of the civil rules, it is a question of law which we review de novo. *Sericola v. Johnson*, 2016-Ohio-1164, 61 N.E.3d 643, ¶ 25 (11th Dist.).

{¶ 24} Civ.R. 8(D) provides, "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." "If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall when applicable accord a right of trial by jury to the parties." Civ.R. 55(A). "Thus, even though a party defaults and admits the

allegations of the complaint, the plaintiff must still establish [her] damages." *Reinbolt* at ¶ 27.

{¶ 25} In support of her position that proximate cause was admitted by appellees through their default, appellant cites *Sokol v. Spigiel*, 9th Dist. Lorain No. 05CA008839, 2006-Ohio-4408. In that case, Sokol filed a complaint against Spigiel for damages resulting from an automobile accident. Spigiel failed to file an answer, and a default judgment was entered. At the damages hearing, Sokol testified regarding her injuries and medical bills, following which the trial court awarded her $20,000. On appeal, Spigiel argued that the trial court erred in awarding damages where there was no competent expert testimony to demonstrate that the expenses were incurred as a direct and proximate result of the accident, and not from Sokol's underlying condition.

{¶ 26} The Ninth District rejected Spigiel's arguments, reasoning that when Spigiel failed to file her responsive pleading, she admitted the allegation that her action was the proximate cause of Sokol's injuries. Thus, "the issue of proximate cause was not before the trial court during its 'damages-only' hearing." *Id.* at ¶ 15.

{¶ 27} Other Ohio cases have likewise held that proximate cause is not an issue at a damages hearing following a default judgment. *See Lester v. Chivington*, 3d Dist. Marion No. 9-15-21, 2015-Ohio-5446, ¶ 25-26 ("In his complaint, Lester alleged that Chivington's actions were the proximate cause of his damages. When Chivington failed to file a responsive pleading, those allegations were admitted as true. * * * Accordingly, the issue of proximate cause was not before the trial court during its 'damages-only'

10.

hearing."); *Bingham v. Slabach*, 5th Dist. Stark Nos. 2008-CA-0085, 2008-CA-0086, 2008-Ohio-5555, ¶ 30-35 (defendant's failure to timely respond to the complaint's allegation that the plaintiff suffered physical injuries, mental anguish, and emotional distress as a direct and proximate result of defendant's negligence constituted an admission to the allegation); *Hover v. O'Hara*, 12th Dist. Warren No. CA2006-06-077, 2007-Ohio-3614, ¶ 45 (where defendant failed to file an answer and a default judgment was entered against him, allegations in the complaint that defendant's negligence or malpractice proximately caused damages relieved plaintiff of burden of proving proximate causation at the damages hearing); *Huffer v. Cicero*, 107 Ohio App.3d 65, 72, 667 N.E.2d 1031 (4th Dist.1995) ("[A]ppellee never filed a proper answer to appellant's initial complaint; therefore, issues regarding negligence and proximate cause were essentially admitted by appellee.").

{¶ 28} Appellees, in response, attempt to distinguish the liability portion of the case from the damages portion of the case. Appellees argue that the liability portion includes the admission that appellees' negligence proximately caused a full two-liter bottle of soda pop to be thrown from the stage and strike appellant. They then argue, in contrast, that the damages portion includes proving that appellant's injuries resulted from being struck in the chest by the bottle. In support, appellees cite one case from the Supreme Court of Texas.

{¶ 29} Appellees' argument adopts the reasoning in *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729 (Tex.1984), in which the Texas Supreme Court identified two

11.

distinct aspects of causation which exist in a personal injury case. The first is the "causal nexus between the defendant's conduct and the event sued upon." *Id.* at 731. The second is the "causal nexus between the event sued upon and the plaintiff's injuries." *Id.* The court held that the former is part of the liability determination that would be included in a default judgment, while the latter is part of the damages determination. *Id.* at 732. Thus, in that case, the Texas Supreme Court held that despite the award of default judgment determining that the defendant's negligence proximately caused a noxious odor to be emitted from a typesetting machine, the plaintiff must still prove that the noxious odor proximately caused the injuries manifesting as blurred vision, headaches, stomach problems, and swelling of the eyes, lips, and nasal passages. *Id.*

{¶ 30} We reject the line of reasoning set forth in *Morgan*. Aside from being wholly non-binding on this court, in our view *Morgan* erroneously grafts into the determination of the amount of damages what is traditionally an issue of causation, i.e., the "causal nexus between the event sued upon and the plaintiff's injuries." *See Schirmer v. Mt. Auburn Obstetrics & Gynecologic Assoc., Inc.*, 108 Ohio St.3d 494, 2006-Ohio-942, 844 N.E.2d 1160, ¶ 40 (Moyer, C.J., concurring) ("Causation requires a factual nexus between the breach and injury (i.e., actual cause) and a significant degree of connectedness that justifies imposing liability (i.e., proximate cause)."). Civ.R. 8(D) recognizes that any issues of causation were admitted by appellees when they failed to respond to appellant's complaint, and the only remaining issue was the amount of damages. Thus, through their default, appellees admitted that their negligence

12.

proximately caused appellant's injuries, and appellant was under no obligation to prove the physiological mechanics of how being struck in the chest by the two-liter bottle led to her losing consciousness, which caused her to fall and injure her wrist and forehead.

{¶ 31} Therefore, we hold that the trial court erred in considering the proximate cause of appellant's injuries in a damages hearing following the entry of default judgment. The trial court's analysis in such a damages hearing is limited to the amount of damages incurred as a result of the injury. Here, that inquiry is limited to a calculation of the amount of damages incurred as a result of the injuries to appellant's wrist and forehead.

{¶ 32} Accordingly, appellant's first and second assignments of error are well-taken.

{¶ 33} In her third assignment of error, appellant asserts that the trial court erred when it failed to award punitive damages. In particular, appellant asserts that punitive damages were warranted where appellees were aware of the risks associated with allowing fans onto the stage, and rather than mitigate those risks, appellees monetized the VIP program.

{¶ 34} We review the award or denial of punitive damages as whether it is against the manifest weight of the evidence. *Hofner v. Davis*, 111 Ohio App.3d 255, 259, 675 N.E.2d 1339 (6th Dist.1996). In reviewing for manifest weight, "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of

13.

fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001).

{¶ 35} "Punitive damages in this state are available upon a finding of actual malice." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 652, 635 N.E.2d 331 (1994). "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis sic.) *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987), syllabus.

{¶ 36} Here, the trial court found that appellant presented no evidence that appellees acted with hatred, ill will, or a spirit of revenge, or that they acted with a conscious disregard for appellant's safety. Rather, the trial court found that appellees took safety precautions with regard to allowing VIP ticketholders onto the stage, such as by contracting for security at the venue and instructing the VIPs regarding what they may and may not do while on stage. We agree, and we hold that the trial court's denial of punitive damages is not against the manifest weight of the evidence.

{¶ 37} Accordingly, appellant's third assignment of error is not well-taken.

14.

## IV. Conclusion

{¶ 38} For the foregoing reasons, we find that substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. The matter is remanded to the trial court for a determination of the amount of compensatory damages to which appellant is entitled based upon the injuries to her wrist and forehead in light of the evidence presented at the April 20, 2018 hearing. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.             _____

                                                        JUDGE

Christine E. Mayle, P.J.           

                                              _____

Gene A. Zmuda, J.                                       JUDGE
CONCUR.

                                              _____

                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.