THE STATE, EX REL. PIZZA, PROSECUTING ATTORNEY, APPELLEE, *v.*
STROPE ET AL., APPELLANTS.

[Cite as State, ex rel. Pizza, *v.* Strope (1990), 54 Ohio St. 3d 41.]

(Nos. 89-763 and 89-765—Submitted April 10, 1990—
Decided September 26, 1990.)

*Anthony G. Pizza*, prosecuting attorney, and *Steven J. Papadimos*, for appellee.

*Jay E. Feldstein* and *Jack Gallon*, for appellants Lee Strope and Abraham Geha.

*Cooper, Straub, Walinski & Cramer* and *John Czarnecki*, for appellants Richard Kaplan, Joel Kaminski, Gary Licata, Andrea Licata, Woodville News, Inc., Donald Wiener, Arthur Davis, Junerose Davis, Sam Paget and E.G.L., Inc.

*Stanley Yoder*, for appellants William Bigelow and Richard Bigelow.

*Sheldon Wittenberg*, for appellant Modern Cinema.

*Eugene Canestraro*, for appellant Florence Audrey Grayczyk, *sub nom.* Florence Audrey Mohr.

*Berkman, Gordon, Murray & Palda, J. Michael Murray, Lorraine R. Baumgardner* and *Ann N. Butenhof*, for appellants Richard Kaplan, Joel Kaminski, Woodville News, Inc. and E.G.L., Inc.

*Joseph Siegel,* for appellant Estate of Mohamed Cheikn and Lillian Cheikn.

*Lorin Zaner,* for appellant Ross Properties.

*Richard Szczepaniak,* for appellants Joyce Ehrmin and Estate of Stanley Ehrmin.

*Daniel T. Kobil, American Civil Liberties Union of Ohio Foundation, Inc.* and *Elinor Alger,* urging reversal for *amicus curiae,* American Civil Liberties Union of Ohio Foundation, Inc.

*Arthur M. Ney, Jr.,* prosecuting attorney, and *William E. Breyer,* urging affirmance for *amicus curiae*, Ohio Prosecuting Attorneys Association.

SWEENEY, J. The present action was instituted by appellee pursuant to R.C. 3767.02. This section provides:

"Any person, who uses, occupies, establishes, or conducts a nuisance, or aids or abets therein, and the owner, agent, or lessee of any interest in any such nuisance together with the persons employed in or in control of any such nuisance by any such owner, agent, or lessee is guilty of maintaining a nuisance and shall be enjoined as provided in sections 3767.03 to 3767.06, inclusive, of the Revised Code."

"Nuisance" is defined in R.C. 3767.01(C) as follows:

"(C) 'Nuisance' means *that which is defined and declared by statutes to be such* and also means any place in or upon which lewdness, assignation, or prostitution is conducted, permitted, continued, or exists, or any place, in or upon which lewd, indecent, lascivious, or obscene films or plate negatives, film or plate positives, films designed to be projected on a screen for exhibition films, or glass slides either in negative or positive form designed for exhibition by projection on a screen,

are photographed, manufactured, developed, screened, exhibited, or otherwise prepared or shown, and the personal property and contents used in conducting and maintaining any such place for any such purpose. This chapter shall not affect any newspaper, magazine, or other publication entered as second class matter by the post-office department." (Emphasis added.)

R.C. 2907.37(B) brings commercial establishments engaged in certain activities within the purview of R.C. 3767.02. It provides:

"Premises used or occupied for repeated violations of section 2907.31 or 2907.32 of the Revised Code constitute a nuisance subject to abatement pursuant to sections 3767.01 to 3767.99 of the Revised Code."

R.C. 2907.32(A)(2) provides:

"(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

"* * *

"(2) Exhibit or advertise for sale or dissemination, or sell or publicly disseminate or display any obscene material[.]"

While "obscenity" is defined in R.C. 2907.01(F), this court, in *State* v. *Burgun* (1978), 56 Ohio St. 2d 354, 10 O.O. 3d 485, 384 N.E. 2d 255, observed that its scope is circumscribed by the protections embodied in the First Amendment to the United States Constitution and, specifically, the three-part test for obscenity announced in *Miller* v. *California* (1973), 413 U.S. 15.[2] Accordingly, in evaluating the obscene nature of materials:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest * * *; (b) whether the work depicts or describes, in a patently offense way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. * * *" *Id.* at 24.[3]

The trier of fact in equitable proceedings (*e.g.,* nuisance abatement actions) is the trial court. In the case at bar, the court, after considering evidence presented over the course of a four-day trial, concluded that the state had failed to satisfy the first two elements of the *Miller* test. On appeal, the court of appeals conducted a *de novo* review of the record and reversed this factual conclusion of the trial court.

Appellee maintains that application of the aforementioned standard of review by the appellate court is supported by *Jenkins* v. *Georgia* (1974), 418 U.S. 153, and *Miller, supra.* This argument is without merit.

In *Jenkins,* the only discussion relative to the appropriate appellate standard was the following observation:

---

[2] The author of this opinion continues to possess grave misgivings regarding the nebulous and subjective nature of the *Miller* test. (See *Urbana, ex rel. Newlin,* v. *Downing* [1989], 43 Ohio St. 3d 109, 119, 539 N.E. 2d 140, 150, H. Brown, J., dissenting). Despite my view that the test is of dubious utility, it is apparent from any fair reading of *Miller* and its progeny that the standards announced therein were misapplied on appeal by the court below.

[3] In *Urbana, ex rel. Newlin,* v. *Downing* (1989), 43 Ohio St. 3d 109, 115, 539 N.E. 2d 140, 146, this court reiterated the view that the test announced in *Miller* involved questions of fact. See, also, *Miller, supra,* at 30; *State* v. *Burgun, supra,* at 357, 10 O.O. 3d at 487, 384 N.E. 2d at 259.

"* * * Even though questions of appeal to the 'prurient interest' or of patent offensiveness are 'essentially questions of fact,' it would be a serious misreading of *Miller* to conclude that juries have unbridled discretion in determining what is 'patently offensive.' Not only did we there say that *'the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary,'* 413 U.S., at 25, but we made it plain that under that holding 'no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive "hard core" sexual conduct. * * *' *Id.,* at 27." *Id.* at 160.

As is evident from the language employed in *Jenkins,* the principles which underlie the First Amendment are the raison d'etre for the independent appellate review envisioned therein. See *Bose Corp.* v. *Consumers Union of United States, Inc.* (1984), 466 U.S. 485, 505.

While *Bose* was a defamation action, its reasoning has been applied by this court to obscenity cases. In *Urbana, ex rel. Newlin,* v. *Downing* (1989), 43 Ohio St. 3d 109, 115, 539 N.E. 2d 140, 146, it was observed:

"An appellate court must conduct an independent review of the record in a First Amendment case *'to be sure that the speech in question actually falls within the unprotected category and to confine the perimeters of any unprotected category within acceptably narrow limits in an effort to ensure that protected expression will not be inhibited.'* Bose, supra, at 505. * * *." (Emphasis added.)

Independent review by an appellate court is therefore limited to those situations where resort thereto is necessary to further the interests protected by the First Amendment. It is wholly inapplicable when those interests have been adequately protected by the judgment under appeal.

Accordingly, inasmuch as the purpose of *de novo* appellate review of materials found to be obscene is to protect the interests which underlie the First Amendment to the United States Constitution, such review is applicable only where there has been a prior determination that the materials at issue are, in fact, obscene.

Conversely, where a factfinder concludes that the materials in question are not obscene, appellate review of the finding is governed by the principles applicable to appeals of other factual issues.[4] In *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 10 OBR 408, 461 N.E. 2d 1273, this court

---

[4] With respect to intermediate appellate courts, the applicable standard is embodied in App. R. 12(C). It provides:

"In any civil action or proceeding which was tried to the trial court without the intervention of a jury, and when upon appeal a majority of the judges hearing the appeal *find that the judgment or final order rendered by the trial court is against the manifest weight of the evidence* and do not find any other prejudicial error of the trial court in any of the particulars assigned and argued in the appellant's brief, and do not find that the appellee is entitled to judgment or final order as a matter of law, the court of appeals shall reverse the judgment or final order of the trial court and either weigh the evidence in the record and render the judgment or final order that the trial court should have rendered on that evidence or remand the case to the trial court for further proceedings; provided further that a judgment shall be reversed only once on the manifest weight of the evidence." (Emphasis added.)

emphasized that, under such circumstances, an extremely deferential standard of review must be applied:

"While we agree with the proposition that in some instances an appellate court is duty-bound to exercise the limited prerogative of reversing a judgment as being against the manifest weight of the evidence in a proper case, it is also important that in doing so a court of appeals be guided by a presumption that the findings of the trier-of-fact were indeed correct.

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. The interplay between the presumption of correctness and the ability of an appellate court to reverse a trial court decision based on the manifest weight of the evidence was succinctly set forth in the holding of this court in *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O. 3d 261]:

" 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'

"See, also, *Frankenmuth Mut. Ins. Co.* v. *Selz* (1983), 6 Ohio St. 3d 169, 172; *In re Sekulich* (1981), 65 Ohio St. 2d 13, 16 [19 O.O. 3d 192]." 10 Ohio St. 3d at 79-80, 10 OBR at 410-411, 461 N.E. 2d at 1276.

The appellate standard expressed in *Seasons Coal Co., supra,* is the appropriate method by which to evaluate the finding of the trial court below. Where a court has made a factual determination that certain materials are not obscene when measured by the standards contained in R.C. 2907.01(F), *Miller* v. *California, supra,* and *Urbana, supra,* and that, consequently, the sale thereof neither violates R.C. 2907.32(A)(2) nor is subject to injunction pursuant to R.C. 3767.02 and 2907.37(B), the decision of the court will not be reversed unless the determination upon which it is founded is against the manifest weight of the evidence.

In the case at bar, the court of appeals erred by applying a standard of review which should be confined to those instances where First Amendment interests are implicated (*i.e.,* where potentially protected expression is found to be obscene). Instead, the appellate court should have limited its inquiry to whether the trial court judgment was supported by some competent credible evidence.

Appellee contends, however, that the decision of the court of appeals may nevertheless be affirmed because it implicitly recognized that the trial court judgment was against the manifest weight of the evidence. This argument misstates the holding of the appellate court. As an initial matter, the court of appeals explicitly stated that its reversal was predicated upon a *de novo* review of the record.

Second, appellee's characterization of the appellate court decision is contradicted by the acknowledgment by the court of appeals that "* * * Dr. Scott's survey, as critiqued by Dr. King, was the most relevant and probative evidence presented * * *" on the issue and its further observation that any objections to the validity of the survey concern the weight to be ascribed to that evidence and not its admissibility.

It is abundantly clear, therefore, that the appellate court employed an inappropriate standard of review to the findings of fact rendered by the trial court. Accordingly, the judgment of the court of appeals is reversed and

the cause is remanded thereto for application of the appellate standard announced herein.[5]

*Judgment reversed and cause remanded.*

MOYER, C.J., DOUGLAS and H. BROWN, JJ., concur.

HOLMES, WRIGHT and RESNICK, JJ., concur in the syllabus and judgment.

ALICE ROBIE RESNICK, J., concurring. I concur in the syllabus and judgment of the majority but write separately. I believe that it is inappropriate for this court to comment upon any facet of the evidence involved in this case at this juncture since we are remanding the case to the appellate court for application of the correct standard of review.

The trial court found the material in question not to be obscene, hence, a *de novo* review by the appellate court was inappropriate. Rather, the appellate court should make a careful review of the entire record to determine whether in fact the judgment of the lower court is against the manifest weight of the evidence.

Therefore, I would simply remand the case to the appellate court without comment upon any portion of the evidence so that the appellate court may objectively review the record applying the appropriate standard of review as we have directed.

HOLMES and WRIGHT, JJ., concur in the foregoing opinion.

---

[5] Inasmuch as the scienter requirement of R.C. 2907.32 is dependent upon knowledge that the materials in question are obscene and that the injunctive relief available under R.C. 2907.37(B) is dependent upon repeated violations of R.C. 2907.32, the applicability of these provisions to the facts of this case must necessarily await further review of the trial court's determination by the court of appeals. Applying the appropriate standard of review, the appellate court must initially determine whether there is sufficient evidence of obscenity prior to reaching any conclusions regarding the application of R.C. 2907.32 and 2907.37(B). This analytical process must therefore be completed by the court of appeals before these issues are properly presented for our consideration.