OPINION
Madeline C. Seybert ("appellant") appeals the August 4, 1999 judgment entry by the Trumbull County Court of Common Pleas, Domestic Relations Division, issuing a final decree of divorce. For the following reasons, we affirm the decision of the lower court.
Appellant and Daniel Seybert ("appellee") were married on May 16, 1980. No children were born of their marriage. On September 16, 1997, appellee filed a complaint for divorce. Appellee also named RMI Titanium Company ("RMI Titanium") and RMI Employees Credit Union ("RMI Credit Union") as third party defendants because they held funds in the name of the parties and/or appellant. On September 19, 1997, the trial court enjoined appellant and appellee from selling, removing, withdrawing, or disposing of property accumulated during their marriage or any other asset, other than funds for their usual and customary living expenses, including for legal representation. Appellant filed an amended answer and counterclaim for divorce on February 5, 1998.
The matter proceeded to trial on February 25, 1999, February 26, 1999 and June 1, 1999. A final divorce decree was filed on August 4, 1999. The trial court determined that the separation/termination date of the marriage was September 1, 1997. Additionally, the trial court found that the parties' individual retirement benefits, accrued during their marriage, were marital assets, subject to equal division. Next, in relation to the 1974 Porsche 914, retained by appellant and valued at nine thousand dollars ($9,000), the trial court determined that it was marital property and ordered appellant to pay appellee four thousand five hundred dollars ($4,500), representing his half interest. In regard to the 1993 Chevrolet pick-up truck, retained by appellee and valued at eight thousand five hundred dollars ($8,500), the trial found it was martial property and ordered appellee to pay appellant $4,250, representing her half interest. As to the 1982 Harley Davidson motorcycle, sold by appellee for five hundred dollars ($500) and valued at $3,650, the trial court determined it was martial property and ordered appellee to pay appellant $1,825, representing her half interest in its value.Finally, as to the certificates of deposits with account numbers 93127 and 45717, the trial court found that they were appellant's separate property and were funded by money that she received from her mother as an "early inheritance gift." As to the remaining certificates of deposit, the trial court determined that they were marital property, subject to equal division, because appellant was unable to trace them as her separate property.
On September 3, 1999, appellant filed a timely appeal, asserting three assignments of error.[1] At this time, we note that appellant's brief fails to reference those portions of the record upon which she relies. App.R. 16 provides that any references to parts of the record in an appellate brief must be accompanied by citations to the record. A reviewing court is not required to search the record for evidence to support an assignment of error. See Gregg v. Gregg (Nov. 21, 1997), Portage App. No. 96-P-0263, unreported, 1997 Ohio App. LEXIS 5241, at 8. In the interest of justice, we will consider appellant's alleged errors. Appellant's assignments of error will be set out as each one is reviewed.
We begin with appellant's first assignment of error:
 "[1.] The trial court abused its discretion by failing to consider the evidence and testimony produced at trial that clearly demonstrated that the plaintiff/appellee committed financial misconduct throughout the marriage and during the pendency of the divorce proceedings."
 In appellant's first assignment of error, appellant contends the trial court erred when it awarded appellee fifty (50) percent of their marital assets and fifty percent of certain separate property because appellee's actions gave rise to an issue of the equitable division of the property. Appellant posits that the award of property should have been uneven and in her favor because the trial court failed to give proper weight to the evidence of appellee's financial misconduct. Specifically, appellant asserts that the trial court failed to consider or even mention appellee's actions pertaining to the 1993 Chevrolet pick-up truck and the 1982 Harley Davidson motorcycle that were sold for far less than their values immediately before the divorce. Appellant claims that appellee committed fraud by attempting to destroy any marital claim on that property. Finally, appellant avers that the testimony showed that appellee spent his money on liquor while she used her funds to support the household, pay the bills, and buy appellee's vehicles.
Briefly, it is necessary to point out that the arguments raised in appellant's first assignment of error refute the trial court's equal division of the property that it determined to be "marital." Appellant's second assignment of error raises arguments as to the trial court's finding that certain property was "marital" and not "separate."A trial court has broad discretion in determining the equitable division of marital property based upon the facts and circumstances. Bisker v.Bisker (1994), 69 Ohio St.3d 608, 609; Bugos v. Bugos (Oct. 15, 1999), Trumbull App. No. 98-T-0141, unreported, 1999 Ohio App. LEXIS 4875, at 5-6. When reviewing the equity of a division of property, an appellate court is limited to determining whether, under the totality of the circumstances, the trial court abused its discretion in dividing the marital property. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. An appellate court must be vigilant in ensuring the trial court's determination is fair, equitable, and in accordance with the law; however, an appellate court must refrain from the temptation of substituting its judgment for that of the trier-of-fact, unless the trial court's decision amounts to an abuse of discretion.Martin v. Martin (1985), 18 Ohio St.3d 292, 295.
The division of marital property is equal, unless such a division would be inequitable. R.C. 3105.171(C)(1). A potentially equal division of the marital property should be the starting point of a trial court's analysis. Martin, supra, at 294; Cherry v. Cherry (1981),66 Ohio St.2d 348, paragraph one of the syllabus. If a spouse engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, then a trial court may compensate the other spouse with a distributive award or with a greater award of the marital property. R.C. 3105.171(E)(3). The party making the allegation of financial misconduct bears the burden of proving such misconduct. Czup v. Czup (Sept. 17, 1999), Ashtabula App. No. 98-A-0046, unreported, 1999 Ohio App. LEXIS 4324, 18.
It is necessary to keep in mind that a trial court is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections in order to assess their credibility and weigh the testimony. State ex rel. Pizza v. Strope (1990), 54 Ohio St.3d 41,45-46, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. In the event that the evidence is susceptible to more than one interpretation, a reviewing court must construe it consistently with the trial court's judgment. Gerijo, Inc. v. Fairfield (1994),70 Ohio St.3d 223, 226. A reviewing court must defer matters of witnesses' credibility to the trier of fact. Babka v. Babka (1992),83 Ohio App.3d 428, 436.
In the case sub judice, on September 19, 1997, the trial court issued a restraining order, enjoining appellant and appellee from selling, removing, withdrawing, or disposing of property accumulated during their marriage or any other asset, other than funds for their usual and customary living expenses, including their legal representation. Appellant alleges that appellee committed fraud by selling the 1982 Harley Davidson motorcycle and the 1993 Chevrolet pick-up truck to destroy her marital claim on that property. Appellant adds that appellee was an alcoholic for the first fifteen years of their marriage.
Appellee testified that he sold the 1982 Harley Davidson motorcycle before the divorce for five hundred dollars. Appellee denied the allegations that he improperly sold it since he had attempted to sell it several times before. Appellant acknowledged that appellee tried to sell it before. Appellee stated that his reason for selling the motorcycle was to obtain legal representation for his divorce. Appellee also indicated that he had no objections to appellant receiving her share of the motorcycle's value, which was ($3,650). The final divorce decree reflects the equal division of the motorcycle's value.
As to the 1993 Chevrolet pick-up truck, appellee testified that used the truck as collateral when he borrowed one thousand dollars ($1,000) from a neighbor/friend so that he could obtain legal representation for his divorce. Appellee stated that he transferred the truck's title to his neighbor/friend; however, once he paid the debt, the title was transferred back to him. The record contains a copy of the truck's title, showing that it was transferred back to appellee. The judgment entry demonstrates that the trial court ordered the equal division of the truck's value. Additionally, as to appellant's allegations of alcoholism, appellee denied drinking a lot and stated that he stopped drinking completely in 1993.
Further, appellee asserted his own allegation that appellant placed the marital assets in the hands of others. Appellant testified she transferred money from her profit sharing account into her daughter's account; however, she did not think that this was a violation of the restraining order because it was income that she received after appellee left. Appellant subsequently indicated that this money was for income that she earned in 1997. Appellant also testified about a couch and refrigerator that were removed from the marital residence, which she stated were damaged during the fire in 1987 and did not think this was a violation of the restraining order.
The trial court was in the best position to determine the witnesses' credibility and weigh the evidence. There is no indication that the trial court ignored aspects of the evidence presented. Even assuming appellee's actions amounted to financial misconduct, the inclusion of the term "may" in R.C. 3105.171(E)(3) indicates that a trial court is granted discretion in compensating a spouse with a greater award of the marital property or with a distributive award. See Huener v. Huener (1996),110 Ohio App.3d 322, 326; Leister v. Leister (Oct. 23, 1998), Delaware App. No. 97CA-F-07027, unreported, 1998 Ohio App. LEXIS 5166, at 11. We cannot say the trial court's decision to equally divide the marital property between appellant and appellee constitutes an abuse of discretion. We may not substitute our own judgment. Appellant's first assignment of error is without merit.
 "[2.] The trial court erred by awarding the appellee half of the appellants [sic] certificates of deposits and half the value of the Porsche 914 that the appellant owns when the evidence at trial clearly established that the property was the separate property of the appellant."
 In appellant's second assignment of error, appellant claims that the trial court erred when it awarded appellee half of her certificates of deposit ("CDs"). Appellant posits that there was a preponderance of evidence to show that the funds for one C.D. were from her personal injury lawsuit. With regard to the Porsche 914, appellant argues that it was bought and financed by her son. Appellant contends that it was titled in her name only for insurance reasons and that she finished making the payments when her son became unemployed, but she expected that he would pay her back.
In a divorce proceeding, R.C. 3105.171(B) requires a trial court to identify the separate property and marital property of the parties. When reviewing a trial court's designation of property as marital or separate, an appellate court applies a manifest weight of the evidence standard of review. Okos v. Okos (2000), 137 Ohio App.3d 563, 596-570, citing Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159; Zeefe v.Zeefe (1998), 125 Ohio App.3d 600, 614. On appeal, a judgment of a trial court will not be reversed as being against the manifest weight of the evidence if it is supported by competent and credible evidence. Fletcherv. Fletcher (1994), 68 Ohio St.3d 464, 468; Glick v. Glick (1999),133 Ohio App.3d 821, 829.
R.C. 3105.171(A)(3)(a)(i) provides that marital property is, among other things:
 "All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both spouses during the marriage." (Emphasis added.)
 On the other hand, separate property includes, inter alia, an inheritance by one spouse acquired during the course of the marriage; any real or personal property or interest on such property acquired by a spouse prior to the marriage; compensation to a spouse for a personal injury; any gift of real or personal property or interest on such property, given to one spouse after the marriage. R.C. 3105.171(A)(6)(a). The commingling of separate property with marital property does not destroy the identity of the separate property, provided the separate property is "traceable." R.C. 3105.171(A)(6)(b); see, also, Peck v. Peck (1994), 96 Ohio App.3d 731, 734.
 This court has held that the party seeking to have property labeled as separate property, bears the burden of proof by a preponderance of the evidence. Matic v. Matic (July 27, 2001), Geauga App. No. 2000-G-2266, unreported, 2001 Ohio App. LEXIS 3360; Letson v. Letson (Sept. 30, 1997), Trumbull App. No. 95-T-5356, unreported, 1997 Ohio App. LEXIS 4445, 8; see, also, Zeefe, supra, 125 Ohio App.3d at 614; Okos, supra, 137 Ohio App.3d 563; Peck, supra, 96 Ohio App.3d at 734.[2]
In the instant case, the trial court determined that the 1972 Porsche 914 and all CDs, except accounts 93127 and 45717, were marital property. Appellant is obviously not contesting the CDs with account numbers 93127 and 45717 that were determined to be her separate property. Our focus is on the remaining CDs and the Porsche.
We begin with the 1972 Porsche 914, valued at nine thousand dollars ($9,000). During the course of their marriage, appellant testified that her son bought the vehicle and that she merely co-signed for the loan. However, appellant stated that the Porsche was titled in her name and that she made most of the payments. Although appellant's son testified that the Porsche was his, he also stated that it was titled in appellant's name and that appellant took over the payments. Additionally, the vehicle was kept in the garage of the marital residence. Appellant did not offer any testimony or evidence to show that the payments that she made for the Porsche were from her separate funds.Upon review of the record, the weight of the evidence supports the trial court's determination that the Porsche 914 is marital property. Appellant bore the burden of demonstrating by a preponderance of the evidence that the Porsche was her separate property. However, the evidence demonstrated that while it was titled in appellant's name, appellant made most of the payments throughout the course of their marriage using marital funds, and that the vehicle was housed at the marital residence. There was no evidence, let alone a preponderance of the evidence, demonstrating that appellant used her separate property to make the payments. As stated, marital property is property, which is currently owned by either or both of the spouses, and, which was acquired by either or both spouses during the marriage. We cannot say the classification of the Porsche as marital property was against the manifest weight of the evidence.
Next, we address those CDs that were classified as marital property. The CDs with account numbers 93127 and 45717 are not at issue. The trial court determined that the funds for the CDs with account numbers 93127 and 45717 were acquired from two $5,000 "early inheritance gifts" to appellant from her mother. The testimony and evidence, pertaining to these CDs, is not relevant to our review of the remaining CDs classified as marital property.
Appellant testified that, in January 1988, she received approximately eleven thousand two hundred dollars ($11,200) as a settlement for a personal injury lawsuit, resulting from a car accident that involved her. Appellant stated that Debora Witten represented her in the personal injury settlement. However, appellant read a letter from Debora Witten stating that there were no records that she represented appellant and that she did not recall such a suit in 1987. Appellant testified that her personal injury lawsuit settlement check was deposited on January 12, 1988 at RMI Credit Union. An exhibit admitted into evidence shows a deposit of eleven thousand three hundred dollars ($11,300) on January 12, 1988 into the parties' main share account. Appellant testified that her personal injury lawsuit settlement was subsequently used to buy a ten thousand dollar ($10,000) CD. Exhibits admitted into evidence show that, on April 25, 1988, $10,000 was transferred from the parties' main share account at RMI Credit Union into a CD. However, appellant also testified that an insurance check for the fire at the marital residence, in a similar amount, was received and deposited at RMI Credit Union around the same time. Appellant stated that the money from the fire insurance check went towards rebuilding the house. There was no other testimony by appellant concerning the traceability of the other CDs from her alleged separate property.
Upon thorough review of the record, although there were numerous exhibits admitted into evidence concerning the parties' financial statements, there is no clear evidence showing that the funds for the remaining CDs were acquired using appellant's "separate property." The only attempt that appellant made to "trace" funds was with her personal injury settlement check. However, appellant was not able to demonstrate, by a preponderance of the evidence, that the funds from her personal injury settlement check were transferred into a ten thousand dollar ($10,000) C.D. on April 25, 1988. An RMI account statement of the parties' main account shows a deposit of eleven thousand four hundred dollars ($11,400) on December 2, 1987 and a deposit of eleven thousand three hundred dollars ($11,300) on January 12, 1988. However, the transfer of ten thousand dollars ($10,000) from the parties' main share account into a C.D. occurred on April 25, 1988. Further, on the same day as the deposit of eleven thousand three hundred dollars ($11,300) on January 12, 1988, there were three withdrawals, totaling $5,663.54. The commingling of separate property with marital property does not destroy the identity of separate property; however, separate property must be "traceable." The evidence presented by appellant did not prove by a preponderance of the evidence that the remaining CDs were traceable to her "separate property." We cannot say that the trial court's decision to classify the remaining CDs as marital property was against the manifest weight of the evidence. Appellant's second assignment of error is without merit.
 "[3.] The trial court erred by awarding the appellee half of the value of appellants [sic] 401K plan when the appellee came to the court with unclean hands."
 Finally, in appellant's third assignment of error, appellant asserts that the trial court erred in awarding appellee fifty percent of her 401K plan since appellee initiated the divorce action and came to court with unclean hands. Appellant again argues that appellee committed fraud and deception with the assets of the marriage, i.e., the vehicles that were transferred before he filed for divorce and his waste of funds during their marriage.
Appellant's argument pertaining to appellee's "unclean hands," resulting from his fraud and deception with the vehicles that were transferred and his waste of funds during the marriage, was already addressed in appellant's first assignment of error. As we stated, the trial court was in the best position to determine the witnesses' credibility and weigh the evidence. We determined that the trial court did not abuse its discretion in ordering an equal distribution of the "marital property." Further, pursuant to R.C. 3105.171(A)(3)(a)(i), marital property includes all real and personal property that is currently owned by either or both spouses and that was acquired during the marriage, including, but not limited to, the retirement benefits of the spouses.
In the instant case, the parties were married on May 18, 1980. The trial court determined that the separation date of the marriage was September 1, 1997. Appellant does not raise argument as to the date of separation. The trial court ordered that the parties' retirement benefits from their respective employers, from May 16, 1980 through September 1, 1997, be equally divided. This included appellant's 401K retirement savings plan through RMI Titanium. Appellant testified that this 401K plan was established during their marriage in 1987. Appellant presented no evidence, let alone a preponderance of the evidence, to show that the 401K plan was traceable to her separate property. The trial court did not err in classifying the 401K retirement plan and the parties' other retirement benefits as marital property. Appellant's third assignment of error is without merit.
For the foregoing reasons, appellant's three assignments of error are without merit. The judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.
JUDGE DIANE V. GRENDELL, FORD, P.J., NADER, J., concur.
[1] Regarding the other defendants in the instant case, on April 24, 2000, upon remand, the trial court issued a judgment entry, dismissing RMI Titanium. The trial court also stated that RMI Credit Union remained a party, pending the division of the funds; however, the August 4, 1999 divorce decree was a final, appealable order, pursuant to Civ.R. 54(B).
[2] As an aside, a spouse, who is asserting that separate property is a gift, bears the burden of proving by clear and convincing evidence that it was gifted to only one spouse.