DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, in which the trial court granted the parties a divorce, allocated parental rights and responsibilities for the parties' three minor children, determined and distributed the marital assets and awarded spousal support and partial attorney fees to appellant/cross-appellee.
 {¶ 2} On appeal appellant, Linda Marie Bass, sets forth the following two assignments of error:
 {¶ 3} "Assignment of Error No. I
 {¶ 4} "A. The trial court's finding of fact on pages 12 through 14 of its decision dated May 21, 2001 as to the division of marital property is in error based on the evidence presented at trial as the trial court incorrectly valued assets multiple times in its computation, resulting in a marital distribution which is in error, and which is inequitable.
 {¶ 5} "B. The trial court in its findings of fact on page 13 of its decision dated May 21, 2001 was in error in assessing the equity in the 1999 Sierra motor vehicle at $828.00.
 {¶ 6} "Assignment of Error No. II
 {¶ 7} "The trial court erred in its findings of fact on page 10 of its decision dated May 21, 2001 in only awarding the sum of $2,500.00 out of a total bill of $15,366.00 after finding that the bulk of the legal services rendered were necessary and reasonable."
 {¶ 8} Appellee, Michael Lee Bass, sets forth the following cross-assignments of error:
 {¶ 9} "I. The trial court abused its discretion when it failed to make a distributive award to appellee on the basis of appellant's financial misconduct.
 {¶ 10} "II. The trial court abused its discretion when it failed to credit appellee for appellee's gross overpayment of temporary support due to appellant's misrepresentation of expenses throughout the divorce proceeding."
 {¶ 11} Appellant and appellee were married on March 25, 1983. Three children were born of the marriage. At all times relevant to this appeal appellant, who holds a college degree and a master's degree in special education, was employed by Lucas County Educational Services as a teacher for handicapped children. Appellant was also employed part time as a bookkeeper for BD Investments, a business owned by appellant's father, Robert Dame. Appellee, who has a high school education, was employed as an estimator and project manager for Ebony Construction Company ("Ebony"), a minority-owned construction business. In addition to his employment at Ebony, appellee owned a snow removal business, M. Bass and Co., which he operated out of the parties' home.
 {¶ 12} The parties separated in April 1999, when appellee moved out of the marital residence and into a home owned by his mother. Appellant filed a complaint for divorce on September 17, 1999. On October 26, 1999, appellant was granted temporary custody of the parties' three children, and appellee was ordered to pay temporary child support in the amount of $420.46 per month, per child, and temporary spousal support in the amount of $1,500 per month. The temporary support orders were based on affidavits filed by the parties, in which appellant stated that she had an annual income of $19,394, and appellee stated that he had an annual income of $77,500.
 {¶ 13} On October 28, 1999, appellee filed a request for an evidentiary hearing "pursuant to the Magistrate's Order file-stamped October 26, 1999." On November 19, 1999, appellant filed a motion to show cause in which she alleged that appellee was not making the court-ordered temporary support payments.
 {¶ 14} On December 15, 1999, February 8, 2000, and March 1, 2000, evidentiary hearings were held before a magistrate, at which testimony was presented by appellant and appellee. Appellant testified at the hearing as to her part time employment by Lucas County Education Services and her father's investment firm. Appellant also testified as to her household expenses, and stated that the mortgage payments on the marital residence were approximately $1,066 per month.
 {¶ 15} Appellant stated that she took $9,000 out of joint savings account at Huntington Bank after appellee moved out of the marital home, and she used the money to complete a second addition on the house that was begun before the parties separated. Appellant further stated that she opened a bank account at the Toledo Area Catholic Credit Union, into which she deposited a $7,000 check from Lifestyles Development Co., payable to herself and appellee, and used the funds to pay for a privacy fence and landscaping.
 {¶ 16} Appellant stated that, after appellee left, he voluntarily made eight payments of $500 each for the support of the parties' children. Appellant further stated that, since appellee left, she had to borrow $14,000 from her father to make ends meet. Appellant testified that, although she was listed as a joint owner of several bank accounts along with her father, she never deposited money into or withdrew funds from those accounts, and she had no idea as to the balance in the accounts.
 {¶ 17} Appellee testified at the evidentiary hearing that his gross income in 1999 was $69,664.75, including a $10,000 bonus he received from Ebony. Appellee testified that his snow removal business generated $22,000 in 1999, including $4,000 he received from selling the truck, when the company was dissolved in March 1999. Appellee further testified that he purchased a new Sierra pickup truck in 1999 for $30,000, and that Ebony reimbursed him for mileage and other business-related expenses that year in the amount of $13,000.
 {¶ 18} Appellee stated that he did not authorize appellant to cash the $7,000 check from Lifestyles. He also stated that the parties' mortgage payment included $821 per month on the first mortgage, with an additional $300 payment on a $42,000 equity line that was to be used to pay for the addition. Appellee further stated that, during their marriage, the parties borrowed $18,000 from appellant's father, which they used for the down payment on the house and to pay for a new roof.
 {¶ 19} On cross-examination, appellee stated that in early 2000 he and his girlfriend attended a convention in Hawaii, along with the owner of Ebony Construction and his girlfriend, at company expense.
 {¶ 20} On March 30, 2000, the magistrate filed a decision, in which he found that, in 1999, appellant's adjusted gross income for child support purposes was $21,680 and appellee's adjusted gross income was $73,085. The magistrate did not include in appellee's income the $13,142.45 in reimbursements for appellant's truck, $22,000 from the sale of M. Bass and Co., or payments by Ebony for certain meal and entertainment expenses, which included the trip to Hawaii and a golf outing in Florida. The magistrate reduced appellee's child support payments to $392.60 per month per child, and continued the order for appellee to pay $1,500 per month spousal support. In addition, the magistrate ordered appellee to pay $2,986.36 in support arrearages, to be paid through income withholding at the rate of $250 per month.
 {¶ 21} On April 11, 2000, appellee filed a motion to modify temporary spousal and child support, in which he asserted that his support obligations should be reduced because the bonus he received in 1999 was for work performed in 1998, and he did not actually receive a bonus in 1999. Accordingly, appellee argued that his annual income for support purposes should be reduced from $73,087.75 to $59,280.00.
 {¶ 22} On April 12, 2000, appellee filed objections to the magistrate's decision, in which he asserted that appellant was voluntarily underemployed, and that, after paying spousal and child support, he had insufficient funds remaining to pay his own expenses. In addition, appellee asserted that the magistrate failed to find that appellant shared a bank account with her father, or that she dissipated approximately $16,000 in marital assets. Accordingly, appellee argued that appellant did not need and should not receive $1,500 per month in spousal support.
 {¶ 23} On July 19, 2000, the trial court filed a judgment entry in which it addressed and overruled each of appellee's objections. Specifically, the trial court found that the parties' income for support purposes was correctly calculated based on their taxable income in 1999, that appellee failed to demonstrate that appellant had misappropriated marital funds or that she was voluntarily underemployed.
 {¶ 24} On September 18, 2000, appellee filed a second motion to modify temporary spousal and child support, in which he asserted that appellant had more income since obtaining full time employment and the parties were contemplating a change of custody for their oldest daughter from appellant to appellee. On October 8, 2000, the magistrate issued a decision, in which he found that appellant's yearly income had increased to $43,000, and appellee's yearly income had decreased to $61,256. Accordingly, the magistrate modified the prior temporary order, reducing appellee's monthly spousal support obligation from $1,500 to $1,000 and reducing his monthly child support obligation to $318.74 per month, per child.
 {¶ 25} On February 1, 2001, a final divorce hearing was held, at which testimony was presented by appellant and appellee. Appellee testified that the value of the marital home was $179,000. He further testified that the current book value of his truck is $19,500, allowing for high mileage, and that in 2000, Ebony reimbursed him $9,876.97 for travel and other expenses. Appellee stated that he did not receive a bonus from Ebony in 2000. Appellee also stated that the Sierra truck could be equipped for snow removal. Appellee further stated that he owed $3,200 to his mother and $17,500 to Ebony, and he had a MasterCard debt of $7,815. Appellee maintained that he did not tell appellant to spend the $7,000 Lifestyles check on landscaping.
 {¶ 26} Appellant testified that she became employed full time in 2000 as a teacher for handicapped children. She further testified that, in 1988, she cashed in $9,000 of her pension in the State Teacher's Retirement System, which the parties used for the first addition on their home. Appellant stated that the $7,000 check from Lifestyles was given to the parties to complete a privacy fence and landscaping between their home and a neighboring apartment complex, and that appellee agreed to complete the project when a construction worker scared the parties' children.
 {¶ 27} Appellant testified that when appellee moved out, the parties had a savings balance of $9,217.11, which she used to pay household bills. She further testified that the parties had an equity loan to pay for the second addition; however, she stopped using the equity line and started using money from the savings account to pay for the addition after appellee moved out. Appellant stated that she borrowed $13,000 from family members in 2000, and $2,000 in 2001, because she could not make ends meet on her salary and appellee's support payments.
 {¶ 28} On cross-examination, appellant testified that she originally put the $7,000 check from Lifestyles in a joint savings account, and then moved the funds to her own account, from which she paid for the fence and landscaping. She also stated that she deposited $4,043 in tax refunds into a Huntington Premiere Account.
 {¶ 29} On May 21, 2001, the trial court filed a judgment in which it granted the parties a divorce, and adopted the parties' stipulations with regard to the allocation of parental rights and responsibilities for the children and the division of certain marital assets, including the marital home, medical insurance and medical expenses, tax exemptions, life insurance policies and the parties' retirement accounts. The court then found that the value of appellee's Sierra truck was $19,500, with a loan balance due of $18,222, and allocated the parties' remaining assets as follows:
 {¶ 30} Appellant/Wife Appellee/Husband
 {¶ 31} Equity in the marital home $64,138 Camper $12,500
 {¶ 32} 1999 Suburban $14,775 Sylvan boat $ 5,205
 {¶ 33} Fidelity IRA $ 3,885 Cash value life ins. $ 5,147
 {¶ 34} Best of America IRA $ 363 Value of Social Security $30,979
 {¶ 35} STRS account $34,638 Engineers Pension $72,820
 {¶ 36} Huntington Premier $ 4,043 Northwestern Mutual IRA $10,127
 {¶ 37} Huntington Checking $ 169 Equity in Sierra truck $ 828
 {¶ 38} Northwest Federal Credit Union $ 254
 {¶ 39} Balance of Huntington Checking $ 3,759
 {¶ 40} Huntington Premier Credit $ 4,034
 {¶ 41} 1999 Tax refund $ 3,810 _______ ________
 {¶ 42} Totals: $133,868 $137,606
 {¶ 43} In addition to the above, the court ordered appellee to pay one-half of a $710 bill outstanding for the children's counseling fees, and awarded appellee one-half of the Huntington Premier account, valued at $4,043, and one-half of the parties' 1999 federal tax refund of $3,810. However, the court found that appellee was not entitled to credit for the $7,000 check from Lifestyles, or the $9,200 appellant withdrew from the Huntington bank account, since evidence was presented that those funds were spent by appellant on "family matters."
 {¶ 44} The court ordered appellee to pay appellant spousal support in the amount of $900 per month for 48 months, after recognizing that such an award would cause a certain amount of economic hardship for both parties. The court further ordered appellee to pay appellant child support in the amount of $255.92 per month per child, plus $200 per month to be applied toward a support arrearage of $8,608.69. Finally, the court found that appellant had incurred $15,366 in attorney fees, appellant had insufficient means to pay all of her own attorney fees, and that the bulk of such fees were reasonable and necessary. Accordingly, the court ordered appellee to pay appellant $2,500 as a one-time spousal support award, to be applied toward the payment of her attorney fees.
 {¶ 45} On June 19, 2001, appellant filed a motion pursuant to Civ.R. 59, in which she asked the trial court to "amend and correct" its findings of fact and conclusions of law. In support thereof, appellant first asserted that the trial court erred by including the parties' 1999 federal income tax refund in the assets allocated to her as part of the Huntington checking account, the Huntington Premier account, and again as a separate line item when it divided the parties' assets. Appellant argues that, as a result, she was credited three times for only one asset, and is therefore entitled to an additional distribution from the marital assets.
 {¶ 46} On July 30, 2001, the trial court filed a judgment in which it found that, even assuming that the federal tax refund had been allocated three times to appellant, such an error would not produce an inequitable result under the facts of this case. In making its decision, the court relied on R.C. 3105.171(F), specifically finding that the assets awarded to appellant have "considerably more liquidity than those assets awarded to [appellee]." Accordingly, appellant's motion was denied. On October 15, 2001, a timely notice of appeal was filed.
 {¶ 47} Appellant asserts in her first assignment of error that the trial court erred by incorrectly including the parties' 1999 federal tax refund "multiple times" in its computation of marital assets, and incorrectly valued the Sierra truck at $19,500 instead of $22,475. Appellant argues that, as a result of the trial court's errors, she is entitled to an additional distribution of marital assets in the amount of $18,494.
 {¶ 48} Pursuant to R.C. 3105.171(C), the division of marital property is to be equal, unless such a division would produce an inequitable result. In such a case, marital property is to be divided on a equitable basis. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. A trial court's division of marital property will not be reversed on appeal absent an abuse of discretion. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 130; Martin v. Martin (1985), 18 Ohio St.3d 292,294-295.
 {¶ 49} R.C. 3105.171 provides, in relevant part, that:
 {¶ 50} "In making a division of marital property * * *, the court shall consider all of the following factors:
 {¶ 51} "(1) The duration of the marriage;
 {¶ 52} "(2) The assets and liabilities of the spouses;
 {¶ 53} "* * *;
 {¶ 54} "(4) The liquidity of the property to be distributed;
 {¶ 55} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 56} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 57} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 58} "* * *
 {¶ 59} "(9) Any other factor that the court expressly finds to be relevant and equitable." R.C. 3105.171(F).
 {¶ 60} Appellant's argument in support of her Civ.R. 59 motion were essentially the same as the argument presented on appeal; i.e., that the trial court erred by counting the parties' 1999 federal tax return three times in computing the value of the marital estate. In considering appellant's motion, the trial court found that the record did not contain admissible evidence that the tax refund had been improperly considered by the court. The court then stated that, even if such an error had occurred, it would not affect the court's equitable distribution of the marital assets.
 {¶ 61} Upon consideration of the foregoing, we find that the trial court properly considered the factors set forth in R.C. 3105.171(F) before denying appellant's Civ.R. 59 motion. The same factors employed by the trial court in that decision apply in this appeal. Accordingly, the court did not abuse its discretion by finding that, even if there was an error in computation as alleged by appellant, an equitable, if not exactly equal, division of the marital property was made to the parties.
 {¶ 62} Appellant next asserts that the trial court erred by placing the wrong value on appellee's Sierra truck. In support thereof, appellant argues that the truck was undervalued by approximately $3,000, which resulted in an equity value of only $878 instead of $3,878.
 {¶ 63} In a divorce action, the trial court has broad discretion to determine the method of valuing martial property, the value of the property, and how the property should be distributed between the parties.Berish v. Berish (1982), 69 Ohio St.2d 318, 319; Eisler v. Eisler
(1985), 24 Ohio App.3d 151, 152. The trial court's valuation, however, must be supported by the evidence. Middendorf v. Middendorf (1998),82 Ohio St.3d 397, 401.
 {¶ 64} A review of the record shows that testimony was presented that the book value of appellant's truck could be as high as $22,475. However, as set forth above, appellant testified that, because of its high mileage, the truck had an actual book value of $19,500. Accordingly, the trial court did not abuse its discretion by choosing to value appellant's truck at $19,500.
 {¶ 65} Upon consideration of the foregoing, we find that the trial court did not abuse its discretion in making an equitable distribution of the martial assets. Appellant first assignment of error is not well-taken.
 {¶ 66} Appellant asserts in her second assignment of error that the trial court erred by awarding her only $2,500 in attorney fees. In support thereof, appellant argues that she owes $15,366 in attorney fees because appellee "litigated or caused to be litigated * * * every major issue in this case * * *." Appellant further argues that she should receive a larger award for attorney fees because of the disparity in the parties' incomes and her indebtedness to her parents.
 {¶ 67} Pursuant to R.C. 3105.18(H), the trial court may award reasonable attorney fees in a divorce proceeding if it:
 {¶ 68} "determines that the other party has the ability to pay
 {¶ 69} the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." Id.
 {¶ 70} In addition, the trial court's determination "should take into consideration * * * the earning abilities of the parties and the relative assets and liabilities of each." Birath v. Birath (1988),53 Ohio App.3d 31, 39. A decision to award or not award attorney fees lies within the sound discretion of the trial court. Rand v. Rand
(1985), 18 Ohio St.3d 356, 359; Parzynski v. Parzynski (1992),85 Ohio App.3d 423.
 {¶ 71} In its May 21, 2001 decision, the trial court stated that it had "considered the dictates of Revised Code 3105.18(H), and the relative financial positions and earning abilities of the parties" and thereafter awarded appellant $2,500, to be applied toward partial payment of her attorney fees. Accordingly, the record demonstrates that the trial court properly considered the appropriate statutory factors in making an award of attorney fees.
 {¶ 72} Upon consideration of the record in this case and the law, we cannot say that the trial court abused its discretion by awarding appellant partial attorney fees in the amount of $2,500. Appellant's second assignment of error is not well-taken.
 {¶ 73} Appellee asserts in his first cross-assignment of error that the trial court erred by not making a distributive award to appellee based on appellant's financial misconduct. In support thereof, appellee argues that, prior to the filing of the complaint for divorce, appellant removed approximately $10,000 from the parties' joint bank accounts and negotiated the $7,000 check from Lifestyles, which was made out to both parties, without his knowledge or consent. Appellee asserts that appellant has failed to account for all of the funds, and further alleges that appellant "stockpiled" those funds for her own future use, while failing to pay household bills during the same time period.
 {¶ 74} As previously stated, in a divorce action, the division of marital property is to be equal, unless such a division would be inequitable. R.C. 3105.171(C)(1). However, R.C. 3105.171(E)(3) provides:
 {¶ 75} "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
 {¶ 76} In making such a determination, this court is mindful that the trial court is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections in order to assess their credibility and weigh the testimony. State ex rel. Pizza v. Strope
(1990), 54 Ohio St.3d 41, 45-46, citing Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77. A reviewing court must defer matters of witnesses' credibility to the trier of fact. Babka v. Babka (1992),83 Ohio App.3d 428, 436.
 {¶ 77} In this case, appellant testified as to when she withdrew money from the parties' joint accounts, when she cashed the $7,000 Lifestyles check, and what she did with the money in each case. After hearing all the testimony, the court made the following findings:
 {¶ 78} "Prior to undertaking a division of marital property, the Court must determine the value of certain property and whether [appellant] committed alleged acts of financial misconduct.
 {¶ 79} "* * *
 {¶ 80} "The [appellee] is claiming that he should receive credit in the property division for two (2) checks, payable to the parties, that were negotiated by the [appellant]. One check was in the amount of Seven Thousand Dollars ($7,000.00), payable to the parties which was received as reimbursement from a contractor to complete fencing and landscaping at the family residence. The [appellant] received the check in August of 1999, subsequent to the separation of the parties but prior to the issuance of any injunction by this Court. The Court finds that the check was cashed by the [appellant] without [appellee's] consent, but with his acquiescence, and that the proceeds were used for their intended purposes. There was a small amount remaining which was used to pay ongoing marital bills by the [appellant].
 {¶ 81} "The second check resulted from the [appellant's] withdrawal of approximately Nine Thousand Two Hundred dollars ($9,200.00) in July of 1999 from a Huntington Bank account maintained jointly with the [appellee]. The Court further finds that the [appellant] has accounted for the expenditure of these funds, all of which related to family matters. The Court further finds that the money was withdrawn and expended prior to the issuance of any injunction by this Court. Accordingly, the [appellee] shall not be entitled to any credits based upon [appellant's] expenditure of the proceeds of either of these checks."
 {¶ 82} Upon consideration of the record in this case, and giving proper deference to the trial court's resolution of issues of fact, including the credibility of the witnesses, we find that the trial court did not err by finding that appellant did not engage in financial misconduct, and subsequently refusing to make a distributive award to appellee on that basis. Appellee's first cross-assignment of error is not well-taken.
 {¶ 83} Appellee asserts in his second cross-assignment of error that the trial court erred by not crediting appellee for an "overpayment" of temporary support during the pendency of the divorce proceedings. In support thereof, appellant argues that, due to appellant's intentional misstatement of her expenses prior to the divorce, he was ordered to pay temporary support that was "significantly above what was appropriate under the circumstances." Appellee cites to the trial court's reductions in his temporary support obligation on two separate occasions as proof that appellant misrepresented her expenses.
 {¶ 84} A review of the entire record demonstrates that, although evidence was presented as to the parties' respective incomes and expenses, the trial court did not reduce appellee's temporary support obligations on that basis. The magistrate reduced appellee's temporary support obligations in October 2000 due to appellant's increase in income as a result of her obtaining full employment, and appellee's decrease in income due to his loss of overtime pay and bonuses. Appellee's temporary support obligations were reduced again by the trial court in the final divorce decree, because appellee demonstrated a further decrease in income. In addition, the trial court stated in its May 21, 2001 decision that "the parties stipulated that there was an arrearage under the temporary order of support in the amount of Eight Thousand Six Hundred Eight Dollars and Sixty-Nine Cents ($8,608.69) as of January 31, 2001 * * *."
 {¶ 85} Upon consideration of the foregoing, we find that the trial court did not abuse its discretion by not giving appellee a credit for previous payments of temporary support. Appellee's second cross-assignment of error is not well-taken.
 {¶ 86} The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is hereby affirmed. Court costs of these proceedings are assessed equally to appellant and appellee.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., Richard W. Knepper, J. and Mark L.Pietrykowski, P.J. CONCUR.