OPINION
{¶ 1} Appellant Christine Morton appeals from an order of the Miami County Court of Common Pleas, Probate Division, denying her motion to terminate her guardianship. She contends that the trial court's decision is against the manifest weight of the evidence. We conclude that there is evidence upon which a reasonable fact-finder could rely in determining that the guardianship should not be terminated, and that the decision of the trial court is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} In July, 2004, Debra Guillozet filed an application seeking appointment as guardian for her mother, Christine Morton, on the basis that Morton was incompetent. At that time, Morton was sixty-seven years old and suffered from severe Parkinson's disease. Attached to the application for guardianship was a report from Morton's physician, who opined that Morton was not mentally competent to make decisions and that she did not "understand the consequences of her actions and the danger it puts her in to return home."
 {¶ 3} The trial court appointed an attorney to represent Morton, and also appointed an investigator. The investigator submitted a report in which she noted that Morton was unable to physically care for herself. The investigator also noted that Morton had limited decision-making skills with "no insight into consequences of her decisions." The investigator recommended the appointment of a guardian, and in August, 2004, the trial court appointed Guillozet as guardian of Morton.
 {¶ 4} In December of 2004, counsel for Morton filed an application to terminate the guardianship on the basis that Morton's condition had improved. Attached to the application was an evaluation form completed by Dr. Amarjeet Birdie, who stated that Morton was not mentally impaired and that he recommended termination of the guardianship.
 {¶ 5} A hearing was held on the application to terminate, following which Morton underwent a neuropsychological evaluation. The neuropsychologist recommended that the guardianship continue. The trial court thereafter entered an order in which it concluded as follows:
 {¶ 6} "Christine Morton has failed to demonstrate that the need for guardianship no longer exists; Christine Morton remains incompetent by reason of dementia due to Parkinson's disease and anxiety disorder and is incapable of taking proper care of herself; [and] a guardianship of Christine Morton is necessary."
 {¶ 7} From this order, Morton appeals.
 II {¶ 8} Morton's sole assignment of error is as follows:
 {¶ 9} "THE DECISION OF THE TRIAL COURT DENYING THE WARD/APPELLANT'S MOTION TO TERMINATE THE GUARDIANSHIP WAS IN ERROR FOR THE REASON THAT SUCH DECISION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} Morton contends that the trial court erred in finding a necessity for her guardianship to continue.
 {¶ 11} The issue is whether Morton, at the time of the trial court's determination, continued to be incompetent. R.C.2111.01(D) defines an "incompetent" as "any person who by reason of advanced age, improvidence, or mental or physical disability, chronic alcoholism, mental retardation, or mental illness is incapable of taking proper care of himself * * *."
 {¶ 12} A proceeding to terminate the guardianship of an incompetent is governed by R.C. 2111.47, which states:
 {¶ 13} "`Upon reasonable notice to the guardian, to the ward, and to the person on whose application the appointment was made, and upon satisfactory proof that the necessity for the guardianship no longer exists or that the letters of appointment were improperly issued, the probate court shall order that the guardianship of an incompetent terminate and shall make an appropriate entry upon the journal. Thereupon the guardianship shall cease, the accounts of the guardian shall be settled by the court, and the ward shall be restored to the full control of his property as before the appointment. * * *"
 {¶ 14} Morton argues that the form completed by Dr. Birdie meets the duty imposed by R.C. 2111.47. In that form, Dr. Birdie noted only one medication that Morton was taking: a drug for psychosis. He stated that she has "decreased short term" memory and that her concentration and comprehension are "mildly impaired." Dr. Birdie also stated that Morton is physically impaired due to Parkinson's disease, but noted that she is not currently mentally impaired. Finally, he noted that Morton seems to be "managing well" at her nursing home facility, and opined that the guardianship should be terminated.
 {¶ 15} Morton also presented the testimony of Donita Cotrell, who works as a nursing assistant at Morton's nursing home facility. Cotrell, who works on Morton's hall, testified that Morton can get around the facility in a wheelchair or with a walker. She also testified that Morton is capable of going to the bathroom on her own and that she dresses and feeds herself. Additionally, Cotrell testified that Morton has trouble getting up from a chair when her medications are not taken on time. Cotrell also testified that Morton cannot live by herself, and that she needs someone to make sure that she takes her medications.
 {¶ 16} In the neuropsychological evaluation performed on Morton in February, 2005, Dr. Bill Smith noted that Morton suffered from dementia due to Parkinson's disease. He also stated that Morton exhibits impulsive behavior that prevents her from making "informed and reasoned decisions" and that her impulsive behavior places her at risk for physical injury. He further noted that she is currently on at least seventeen different medications, which she was unable to list, and that her behavior results in her failing to take her medications appropriately. Finally, Smith opined that Morton's "best interests and safety are served by continuing guardianship."
 {¶ 17} The guardian, Debra Guillozet, also testified. Guillozet is a Licensed Practical Nurse. She noted that Morton had shown improvement in that she had gained some weight and could dress and wash herself. However, Guillozet also noted that Morton is incapable of managing her medications.
 {¶ 18} Morton's assignment of error requires us to determine whether the trial court's determination that the necessity for the guardianship continues to exist is against the manifest weight of the evidence. The record demonstrates that there are conflicting opinions on this issue. Morton argues that her evidence is stronger and should be deemed to outweigh the evidence presented by her guardian. However, there is credible evidence in the record supporting a finding that Morton is incompetent by reason of dementia and that this condition prevents her from properly caring for herself.
 {¶ 19} A judgment supported by some competent, credible evidence will not be reversed as against the manifest weight of the evidence. C.E. Morris Company v. Foley Construction Company
(1978), 54 Ohio St.2d 279. Upon review, we find that there is sufficient competent, credible evidence to support the trial court's decision, and that this evidence is not clearly outweighed by countervailing evidence. Accordingly, Morton's sole assignment of error is overruled.
 III {¶ 20} Morton's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Brogan and Donovan, JJ., concur.