OPINION
{¶ 1} Appellants, Gayla Amato ("Amato") and Betty Jean DiCillo ("Mrs. DiCillo"), appeal from an order of the Geauga County Court of Common Pleas, Probate Division, denying their motion to terminate the guardianship of the person and estate of Betty Jean DiCillo. Appellants contend that the trial court's decision is against the manifest weight of the evidence. Since we find that the decision is supported by competent, credible evidence, we affirm the trial court's decision. *Page 2 
 {¶ 2} Factual and Procedural Background
 {¶ 3} On October 22, 2004, appellant's son, Nicholas A. Vitt ("Vitt") filed an application for appointment of an emergency guardian over appellant's person and estate. In support of the application, Vitt averred that his mother was suffering from dementia, was legally blind, and non-ambulatory due to the amputation of one of her legs. He further averred that a guardianship was necessary because she could not care for herself and refused to take medication and seek necessary medical treatment. An expert confirmed appellant's dementia and opined that appellant was not physically or mentally competent to care for herself. The court appointed Vitt emergency guardian. Subsequently, on February 15, 2005, the court found appellant to be incompetent by reason of a mental impairment and named Vitt and his sister, Melissa Reeves, as co-guardians.
 {¶ 4} On January 18, 2006, appellants filed their motion to terminate the guardianship on the ground that Betty Jean DiCillo, age 78, was no longer under a disability. The court conducted a two-day evidentiary hearing during which appellants presented several lay witnesses who testified as to Mrs. DiCillo's current mental and emotional state. The court also heard the testimony of the co-guardians and psychiatrist Deborah J. Gould ("Dr. Gould"), who had examined appellant prior to the hearing. Dr. Gould opined that appellant continued to be mentally impaired and was suffering from vascular dementia. The trial court concluded that the necessity for a guardianship continued to exist, and consequently denied appellants' motion to terminate the guardianship. *Page 3 
 {¶ 5} Standard of Review-Manifest Weight of the Evidence
 {¶ 6} Appellants raise the following assignment of error:
 {¶ 7} "The trial court ignored the manifest weight of the evidence in denying a motion to terminate guardianship."
 {¶ 8} Appellants challenge the trial court's decision on the ground that it is against the manifest weight of the evidence. In deciding whether a judgment is against the manifest weight of the evidence, we are mindful that every reasonable presumption must be made in favor of the judgment and findings of fact. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. The underlying rationale in giving deference to the trial court's findings of fact is that the trial court "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." State, ex rel. Pizza v. Strope (1990),54 Ohio St.3d 41, 46, quoting Seasons Coal, supra. Therefore, judgments supported by some competent, credible evidence will not be disturbed as being against the manifest weight of the evidence. Shemo v. MayfieldHeights (2000), 88 Ohio St.3d 7, 8; CE. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 9} Rebuttable Presumption of Incompetence
 {¶ 10} R.C. 2111.01(D) defines an "incompetent" as any person who is so mentally impaired by reason of a mental or physical disability, or mental retardation, or chronic substance abuse that he or she is incapable of taking proper care of himself or herself or property. There is a presumption that once a person is found to be incompetent that he or she remains incompetent; however, this presumption is rebuttable.In re Breece (1962), 173 Ohio St. 542, 553. Pursuant to R.C. 2111.47, a *Page 4 
guardianship may be terminated upon satisfactory proof that the necessity for the guardianship no longer exists.
 {¶ 11} Appellants argue that the disability Mrs. DiCillo suffered from, at the time the guardianship was created, was brought on by medical and surgical problems, which were temporary in nature, and, which no longer exist. In arguing that the judgment is against the manifest weight of the evidence and that termination of the guardianship is warranted, appellants maintain that they presented ample evidence to show that Betty Jean DiCillo was capable of taking care of herself and her finances. Appellants essentially contend that the trial court placed too much emphasis on the psychiatrist's testimony, while minimizing the testimony of several lay witnesses who testified as to her competency.
 {¶ 12} Expert Testimony
 {¶ 13} The probate court heard the testimony of Dr. Gould, a board certified geriatric psychiatrist who conducted an evaluation of Mrs. DiCillo by mutual agreement of the parties. Dr. Gould testified that, in her opinion, appellant is mentally impaired and suffers from vascular dementia. In making this determination, Dr. Gould opined that Mrs. DiCillo is unable to make sound decisions regarding her medical care, living arrangements, and finances; and, is incapable of caring for herself. Dr. Gould explained that while Mrs. DiCillo has good knowledge, normal intelligence, and can carry on a conversation, her concentration is impaired and her judgment and insight are "markedly impaired" particularly in terms of understanding her medical conditions and treatment. As an example, although Mrs. DiCillo understood that her leg was amputated, Dr. Gould testified that she was unwilling to acknowledge how that disability affected her ability to *Page 5 
care for herself. Dr. Gould further observed that Mrs. DiCillo's speech patterns were rapid and difficult to interpret and that her speech was tangential in nature. In other words, Mrs. DiCillo had difficulty answering questions, and, in fact, when asked a question, Mrs. DiCillo never really answered the question but, instead, diverted into other topics.
 {¶ 14} Lay Witnesses
 {¶ 15} Appellants presented no contrary expert medical testimony but, rather, brought forth a number of lay witnesses, including Mrs. DiCillo in an attempt to rebut the presumption of continued incompetence.
 {¶ 16} Mrs. DiCillo testified that in October 2004, following elective eye surgery, she was placed in a nursing home. She testified that she originally agreed to the guardianship because she felt pressured to do so; that she had not understood the implications of a guardianship prior to giving her consent; and that she never believed she was in need of a guardianship. Mrs. DiCillo further testified that she felt she was able to take care of herself with the help of her friends. She denied having certain medical conditions, such as coronary artery disease and downplayed the need to take medications. For instance, she testified that she had never taken insulin for her diabetes prior to her admission at the nursing home. She further testified that she refused to take "funny pills" for depression.
 {¶ 17} Several lay witnesses, including Mrs. DiCillo's former financial advisor and her brother, as well as other witnesses, corroborated the fact that appellant was able to carry on a relevant conversation and explained that she has always given long answers to questions, providing more detail than what was necessary in her responses. *Page 6 
 {¶ 18} Appellant's daughter and co-appellant, Gayla Amato, testified that she became involved in her mother's quest to terminate the guardianship after receiving notice that her siblings had intended to sell her mother's home. Prior to that, she had not seen her mother for two years and had been estranged from her siblings for fifteen years. Recognizing that her mother could not care for herself completely, Amato still believed that termination was necessary so that her mother could re-claim her identity. In her opinion, her mother was taking care of her medical needs appropriately and was used to doing things for herself. Amato offered to help her mother if the guardianship was terminated.
 {¶ 19} The record demonstrates that the trial court's judgment is supported by competent, credible evidence. The probate court found that the lay witnesses' testimony that Mrs. DiCillo was alert and able to carry on conversations was consistent with Dr. Gould's opinion that Mrs. DiCillo possessed good knowledge and intelligence. At the same time, the testimony of such witnesses did not refute Dr. Gould's opinion that Mrs. DiCillo was mentally impaired and incapable of caring for herself appropriately or making sound decisions.
 {¶ 20} Moreover, during the hearing the probate court observed Mrs. DiCillo's inability to stay focused during questioning, which confirmed the observations and opinions of Dr. Gould. Even though appellant was able to recant details from her past, her relationship with her children, her medical history, and her stay at the nursing home, the court was repeatedly required to instruct appellant to answer the questions asked and to not stray off course, as she oftentimes did. *Page 7 
 {¶ 21} Competent, Credible Evidence
 {¶ 22} Appellants' argument that the trial court placed too much emphasis on Dr. Gould's testimony is without merit. When arguing that a judgment is against the manifest weight of the evidence, appellants can prevail only if they can demonstrate that there was no competent, credible evidence upon which the trial court based its decision. Where, however, there is credible evidence in the record to support a finding that the ward is incompetent by reason of vascular dementia, and that the ward is incapable of properly caring for herself, the trial court's decision denying termination of the guardianship must be upheld. SeeIn re Guardianship of Morton, 2d Dist. No. 2005-CA-22, 2006-Ohio-1139, at ¶ 18. As a reviewing court, we are unwilling to second guess the trial court's determination where there is credible, competent evidence to support it, nor are we willing to weigh the credibility of the witnesses. Karnofel v. Girard Police Dept., 11th Dist. No. 2004-T-0145,2005-Ohio-6154, at ¶ 19.
 {¶ 23} In this respect, appellants' reliance on In re Guardianship ofRich (Nov. 17, 2000), 11th Dist. No. 99-A-0062, 2000 Ohio App. LEXIS 5360 and In re Bolander (1993), 88 Ohio App.3d 498, is misplaced as those decisions are distinguishable.
 {¶ 24} In Rich, the overwhelming evidence, including the testimony of a psychologist and psychiatrist, revealed that the ward was competent to care for himself. Under those circumstances, this court found that the probate court's appointment of a guardian was against the manifest weight of the evidence.
 {¶ 25} Likewise, in Bolander, this court reversed the trial court's decision and terminated the guardianship where the psychiatric report indicated no evidence of dementia and where the physician found that appellant was able to handle her day-to- *Page 8 
day affairs. The Bolander court concluded that this psychiatric report was sufficient to rebut the presumption of continuing incompetence.
 {¶ 26} Unlike the facts presented in Rich and Bolander, in this case, there was credible evidence from the psychiatric expert that appellant continued to suffer from dementia, was incapable of handling her daily affairs, was incapable of making decisions concerning her medical treatment, and was incapable of managing her finances and property. The fact that there were a number of lay witnesses who offered testimony that Mrs. DiCillo has always had a propensity to give long answers to questions, was capable of carrying on relevant conversations and had a good memory does not rebut this medical evidence, which goes to the ultimate issue of whether she remained incompetent. Under these circumstances, we find that the decision of the trial court was supported by competent, credible evidence.
 {¶ 27} Appellants' assignment of error is without merit.
 {¶ 28} The judgment of the trial court is affirmed.
CYNTHIA WESTCOTT RICE, P.J., concurs,
 COLLEEN MARY OTOOLE, J., concurs in judgment only. *Page 1